## THE AGRICULTURAL, MECHANICAL, AND BLOOD-STOCK ASSOCIATION v. ROBERT BREWSTER.

1. PAROL EVIDENCE OF TRUST IN LANDS.—While it is the settled law in Texas that a trust in lands can be shown by parol evidence, it is also settled, that it can only be done upon clear and satisfactory testimony.

2. INADEQUACY OF PRICE—JUDICIAL SALE.—Mere inadequacy in price is not sufficient to avoid a sheriff's sale.

3. SAME.—See facts held insufficient to establish a trust or to avoid a sheriff's sale.

17

APPEAL from Harris.    Tried below before the Hon. James Masterson.

Brewster, plaintiff below, sued the Agricultural, Mechanical, and Blood-stock Association of Texas, a private corporation, for the title and possession of the tract of land in the city of Houston known as "the Fair Grounds," alleging his purchase of it at three judicial sales,—one under a judgment rendered in the District Court of Harris county and an execution issued thereon, and the other two sales had under executions issued upon judgments rendered by a justice of the peace of said county; that he was the owner of the property by said purchases and deeds made to him thereunder, and entitled to the possession, but that the defendant refused to deliver the possession thereof to him, and he prayed "for title and possession."

The defendant answered, substantially, that the property had been purchased for the purposes of the association; that proper buildings and substantial fences had been erected by it, the whole at a cost of about $100,000; that plaintiff had bought at execution sale, and at an outlay, in all, of less than $1,200; that plaintiff bought in trust for the association; but for that fact defendant would have protected the property from sale; that it offers to reimburse the plaintiff for all outlay and interest at such time as the court may fix; pleaded the gross inadequacy of price, &c.

Judgment was rendered for plaintiff.    Defendant appealed.

The testimony upon the material points, by agreement, was as follows:

Brady testified that he was president of the association and was elected in July, 1877; that after his election and before he accepted the office, having heard that Brewster had bought in the property at the sales under the judgments, he went to him to know under what circumstances he had purchased it, and Brewster told him that he had purchased to protect the association; that he told Brewster he was hesitating about accepting the office of president on account of the situation

of the property, and Brewster said, "Go ahead, and, upon the honor of a gentleman, you shall have no trouble,"—and that Brewster added that he held the property in trust for the association; that he only wanted his money and interest back, and that then the property would belong to the association; that this conversation was in July or August, 1877; that upon these assurances he (Brady) accepted the presidency, and that he would not otherwise have done so,—at least not until he could have made provision to pay Brewster what he had expended and the interest thereon, if he had demanded it, which he never did.

Franklin testified that he was a director of the association when Brewster bought the property, and upon his return from New York he heard that Mitchell had the property advertised for sale; that he went to see if an arrangement could be made about it, but learned that Mitchell had postponed the sale; that he learned subsequently that Brewster had purchased it, and went to him to know what he would do about it; that Brewster said if the appellant would pay him back the money and interest upon it he would release it to the association; and this he said several times before this suit, and repeated it after the suit was brought.

Oliver testified that he recovered a judgment against the appellant, wished to collect the money, and was referred to Brewster; that about four months before the trial he went to Brewster to know if he would pay it, and he answered that he would not,—that he had already paid out more money than he could get back from the appellant, and would not pay out any more for it.

Brewster, plaintiff below, testified that he never agreed with the president, directors, or officers of the appellant, or any of them, or with any one else, to buy in the property for the appellant; that he bought it for himself and no one else; that he did not remember any such conversation with Brady as he stated; that after Brady was elected president of the association they casually met on the street, and he told wit-

ness that he wanted to get the creditors together, and that he would call a meeting to make some arrangements, but witness never told Brady or any one else that he had bought in the property for the appellant; that he had such a conversation with Franklin as he stated, and would have reconveyed the property to the appellant if it had then paid his money and interest; but that this conversation was voluntary, and not based upon any previous agreement with any one connected with the association.

Cleveland testified that he was a director at the time of the purchase of the property by Brewster, and before that time, but ceased to be such in July, 1877; that he heard that Mitchell had the property advertised for sale, and as witness held some of the bonds of the appellant for himself and two of his friends, he went to Brewster and asked him if he would buy in the property, and he refused; that witness was acting for himself and friends, and not for the appellant; that the property was not then sold, but the sale postponed, and the witness subsequently heard that the property had been sold and that Brewster had bought it; that after this there was a meeting of the directors, and the witness Franklin attended and told the directors that Brewster proposed that if they would pay him his money and interest he would convey the property to the appellant; that witness then offered to subscribe and pay $300 towards it, and urged the others to subscribe, but no one else offered to do so; and that while a director he never heard that Brewster had bought the property for the association, and nothing of the kind was ever intimated at any meeting of the directors that he attended.

Brewster, at the execution sales of the property, bought it at three sales, in the aggregate amounting to $1,200.

Brady testified that he hardly knew the value of the property; that the appellant paid between $9,000 and $10,000 for it, and with this and what it has expended in improving it, the property has cost between $80,000 and $100,000; that the property was more valuable when bought that now; that

he would as soon give $30,000 for it, if he had the money, as for any other Houston property for public purposes; that he considered it worth as much as it cost, but it would not sell for as much; that the value of property depends upon the use made of it; that if one desired the property for a public park or fair grounds, it is worth what the land and improvements cost, but for any other purpose it is not worth more than $30,000; that if he had the money and wished to invest it in that kind of property for public purposes, he would give $30,000 for it, but that if he had $30,000 he would not give it for the property for private use.

Franklin testified that he sold the property to the appellant for $9,750; that with the improvements now upon it he would judge it to be worth $30,000, but it is worth less now than when appellant bought, and if forced to sale it would not bring one-third of that.

Cleveland testified that he had some of the bonds of the appellant and would take fifty cents on the dollar for them, but did not think they could be sold for that, or for more than twenty cents on the dollar; that he thought the property worth $15,000 or $20,000, and did think it would sell for more, and that the bonds are a lien on the property.

For Brewster, it was proved that the appellant had provided for the issuance of bonds to the amount of $30,000, drawing ten per cent. interest, and had executed a deed of trust upon the property to secure them; that they had sold of said bonds to the amount of $6,000, and had hypothecated the balance at fifty cents on the dollar to secure $14,500; that the deed of trust to secure said bonds provides that the bonds should become due upon failure to pay the interest as it became due, and that the appellant had failed to pay the interest.

*Crank & Webb*, for appellant.

I. The evidence shows that Brewster bought in the property for the defendant. (Carter v. Carter, 5 Tex., 93; James

v. Fulcrod, 5 Tex., 512; Lucketts v. Townsend, 3 Tex., 119; Dunham v. Chatham, 21 Tex., 245; Leakey v. Gunter, 25 Tex., 400; Mead v. Randolph, 8 Tex., 191; McClenny v. Floyd, 10 Tex., 163; Barziza v. Story, 39 Tex., 355; Stampers v. Johnson, 3 Tex., 1.)

II. The price paid was inadequate. (Burch v. Smith, 15 Tex., 219; Johnston v. Shaw, 33 Tex., 584; 2 Story's Eq. Jur., secs. 246, 247.)

III. Tender. (Lucketts v. Townsend, 3 Tex., 119; Watts v. Johnson, 4 Tex., 317; Hatch v. Garza, 7 Tex., 60.)

IV. Weight of testimony. (Willis v. Lewis, 28 Tex., 185; Shropshire v. Doxey, 25 Tex., 127; Cunningham v. The State, 5 Tex., 440.)

*Baker & Botts*, for appellee.

I. This court will not disturb the finding in the court below, if there is evidence to support it, or where the testimony was conflicting. (Stroud v. Springfield, 28 Tex., 651; Powell v. Haley, 28 Tex., 53; Tuttle v. Turner, 28 Tex., 760; Latham v. Selkirk, 11 Tex., 314; Baldridge v. Gordon, 24 Tex., 288.)

II. Inadequacy of price at a judicial sale is not sufficient to set it aside, unless connected with such other circumstances as will justify the inference that it was fraudulent; and no such other circumstances are in proof in this case. (Allen v. Stephanes, 18 Tex., 658; Story's Eq., secs. 245, 246.)

BONNER, ASSOCIATE JUSTICE.—In this case there is no question as to the validity of the judgments, executions, and levies by which the sales were made under which the appellee, Robert Brewster, purchased the property in controversy; but to avoid the effect of the same it is contended—

First. That appellee holds the property in trust for appellant.

Second. That the consideration paid was grossly inadequate.

I. By virtue of these sales, appellee obtained the legal title to the property.

Although it is the settled law of this court, that a trust can be shown by parol evidence to have attached to the legal title, it is also well settled, that the same cannot be established except by clear and satisfactory testimony. (Mead v. Randolph, 8 Tex., 191; Hall v. Layton, 16 Tex., 262.)

The burden of proof that such trust existed was upon the appellant, and the testimony was conflicting. Under the well-established rules of practice of this court, the judgment in favor of appellee sustaining the legal title should not be disturbed. (Carter v. Carter, 5 Tex., 93; Rich v. Fergurson, 45 Tex., 396.)

II. It is also the settled law of this court, that mere inadequacy of price is not sufficient to authorize a sheriff's sale to be set aside. (Moore v. Lowery, 27 Tex., 542.)

The testimony as to whether the price paid in this case was inadequate, was also conflicting. "Under the rules of law applicable to the case as presented to us, the judgment should be affirmed." (Stroud v. Springfield, 28 Tex., 676.) It is accordingly so ordered.

AFFIRMED.