CITY OF FT. WORTH, TEX., v. NATIONAL PARK BANK OF NEW YORK
et al.

(Circuit Court of Appeals, Fifth Circuit. December 2, 1919.)

No. 3367.

1. CORPORATIONS ⬌404(2)—CONVEYANCE BY PRESIDENT PASSES TITLE IN ABSENCE OF OBJECTION BY EXISTING CREDITOR.

A conveyance, signed and acknowledged by the president of a Texas corporation as such, which complied with Rev. St. Tex. 1911, arts. 1173, 1108, though voluntary and to the stockholders of the corporation, one of whom was the president, will pass title in the absence of objection by a then existing creditor; the corporation not appearing insolvent.

2. TRUSTS ⬌17, 18(3)—RESULTING TRUST NEED NOT BE EVIDENCED BY WRITING.

Under the Texas law, the fact that one having title to land holds it in trust for another need not be evidenced by writing.

3. CORPORATIONS ⬌445—CONVINCING EVIDENCE NECESSARY TO REBUT PRESUMPTION THAT BENEFICIAL INTEREST PASSES BY CONVEYANCE TO STOCKHOLDERS.

A conveyance by a corporation to its stockholders, though voluntary, presumptively passes the beneficial interest, and the evidence sufficient to show that the corporation still held the beneficial interest must be clear and convincing.

4. CORPORATIONS ⬌445—NO RESULTING TRUST ON CONVEYANCE OF LANDS BY CORPORATION TO STOCKHOLDERS.

Where a corporation, without objection by then existing creditors, and which was then solvent, conveyed lands to its principal stockholders, *held*, that such conveyance, under the evidence, cannot be deemed to have carried with it only the legal title, but the beneficial interest passed.

5. CORPORATIONS ⬌542(3)—CONVEYANCES TO STOCKHOLDERS, NOT SUPPORTED BY CONSIDERATION, MAY BE ATTACKED BY CREDITORS.

A conveyance by an insolvent corporation to its stockholders, which was not supported by an adequate consideration, may be attacked by existing creditors.

Appeal from the District Court of the United States for the Northern District of Texas; Edward R. Meek, Judge.

Bill by the National Park Bank of New York against the Reid Cattle Company and the City of Ft. Worth, Tex. From the decree for complainant, the City of Ft. Worth appeals. Affirmed in part, and reversed in part.

Sidney L. Samuels and P. Walter Brown, both of Ft. Worth, Tex. (T. J. Powell, Sidney L. Samuels, and P. Walter Brown, all of Ft. Worth, Tex., on the brief), for appellant.

S. H. Cowan, I. H. Burney, and R. W. Flournoy, all of Ft. Worth, Tex. (I. H. Burney and Flournoy & Smith, all of Ft. Worth, Tex., on the brief), for appellees.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

WALKER, Circuit Judge. On a bill filed by the appellee, National Park Bank of New York, which, in April, 1914, became a creditor of Reid Cattle Company, a Texas corporation (which will be referred to

as the Cattle Company), it was adjudged that lands described in two deeds executed by the Cattle Company, one on the 7th day of December, 1911, which embraced all the lands referred to, except two small tracts, and the other on the 25th day of August, 1914, embracing the last-mentioned tracts, were liable to be subjected to the payment of debts owing by the Cattle Company, on the ground that neither of those deeds was intended to divest the grantor therein of the beneficial ownership of the lands conveyed, and that the grantees in said deeds acquired title to and held the lands conveyed in trust for the grantor. The appellant, the city of Ft. Worth, which before the suit was brought acquired whatever right to the lands in question the two deeds mentioned conferred on the grantees therein, resisted the claim asserted by the bill on the grounds, among others, that no beneficial ownership in the lands remained in the Cattle Company after the execution of the deeds made by it, and that, if the grantees in those deeds held the lands conveyed in trust for the grantor, the trust was one which was not enforceable against the appellant, because it occupied the position of a purchaser of the lands for a valuable consideration and in good faith without notice of the existence of the trust.

The Cattle Company was incorporated in June, 1911, with a capital stock of $150,000, divided into 1,500 shares, of the par value of $100 each. There were three subscribers to the stock, R. T. Reid, E. E. Baldridge, and T. M. Presley. Reid and Baldridge each subscribed for $74,950 of the stock. Presley's subscription was for one share, $100. Reid and Baldridge paid $125,000 on their subscriptions, by conveying to the corporation lands in Texas, an undivided one-half interest in which was owned by each of them, subject to the claim of the state of Texas for the unpaid part of the purchase price and interest thereon. The balance of the amounts called for by the subscriptions was paid in cash. Baldridge paid for the one share subscribed for by Presley, and was the owner of that share from the beginning. Presley's participation in the organization was for the purpose of complying with a requirement of the Texas incorporation statute. The Cattle Company's deed of December 7, 1911, was signed and acknowledged by Reid as president, the seal of the corporation being attached. By its terms the grantor—

"for and in consideration of the sum of ten dollars to it in hand paid, and for other good and valuable consideration, and for the further consideration, that the grantees hereinafter named assume, pay off, and discharge the amount due to the state of Texas on the land hereinafter described, have bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey unto E. E. Baldridge and R. T. Reid, of Tarrant county, Texas, all those certain lots, tracts or parcels of land lying and being situated in Crane county, Texas, and more particularly described as follows, to wit," etc.

The lands described were school lands bought from the state on long time; the deferred part of the price payable to the state bearing a low rate of interest. By warranty deeds made on June 8, 1914, and August 25, 1914, and hereinafter referred to, Reid conveyed to Baldridge an undivided one-half interest in the lands embraced in the deed of December 11, 1911. Baldridge died before this suit was brought.

[1-3] The last-mentioned deed was capable of conferring on the

grantees named in it the beneficial ownership of the lands described,. if the parties to it intended it to have that effect. The deed was signed and acknowledged as required by the Texas statute prescribing the requisites of a conveyance of land by a corporation. Revised Statutes of Texas, arts. 1173, 1108. At the time it was made Reid and Baldridge owned all the stock of the Cattle Company. In the absence of objection by any one who was a creditor of the corporation at the time the deed was made, Reid, as president, could effectually make, in the name of the corporation, a deed of gift of its lands to himself and Baldridge. Harbor Co. v. Manning, 94 Tex. 558, 63 S. W. 627; Taylor Feed Pen Co. v. Taylor Nat. Bank, 181 S. W. 534. The claim that the grantees acquired the title and held the land as trustees for the grantor is based on the contention that the circumstances of the transaction were such as to show that the parties to it did not intend to effect any change in the beneficial ownership. On their face the terms of the deed indicate the contrary. The provision imposing on the grantees the obligation to pay what was owing to the state on the purchase price of the land strongly suggests the absence of an intention that the grantor should remain the owner and subject to the burden imposed by the debt owing for the land. If, however, no change in the beneficial ownership was intended, and the intention, when and after the deed was made, was that the grantees should hold the land, not for themselves individually, but for the grantor, that fact could be shown by parol evidence, as under the Texas law the fact that one having the legal title to land holds it in trust for another is not required to be evidenced by writing. Houser v. Jordan, 26 Tex. Civ. App. 398, 63 S. W. 1049; Agricultural Association v. Brewster, 51 Tex. 257. But clear, satisfactory and convincing evidence is required to overcome the presumptions arising from a deed, the terms of which do not indicate that the grantee was to hold the land conveyed for any one other than himself, and to show that he acquired or held it in trust for another. King v. Gilleland, 60 Tex. 271; Agricultural Association v. Brewster, supra; Bunel v. Nester, 203 Mo. 429, 101 S. W. 69; Goodrich v. Hicks, 19 Tex. Civ. App. 528, 48 S. W. 798.

[4] What principally must be relied on to show the existence of the alleged trust is evidence tending to prove that the parties to the transaction were moved to get the title to the lands conveyed by the deed of December 7, 1911, out of the Cattle Company and into the two individuals who owned all the stock of that company by a suggestion that the law of Texas did not permit corporate ownership of school lands situated as those conveyed were. All the evidence on that subject is found in the testimony of Reid, the only surviving grantee, and of Judge George Miller, the lawyer who prepared that deed.

At the time Reid gave his testimony he was not interested in defeating the claim asserted by the bill, as he had been released from liability on obligations of the Cattle Company. On his direct examination as a witness for the plaintiff he testified to the following effect: A Mr. Caldwell, a lawyer of Midland, Tex., advised him to have the school lands deeded by the Cattle Company to its stockholders, on the ground that he feared that under some existing Texas law the land would be

forfeited if the title was kept in the corporation. The witness informed Baldridge of the suggestion, and the latter advised him to consult their lawyer, Judge Miller. This was done, and the deed was made in pursuance of the advice of Mr. Caldwell and Judge Miller. The purpose of making that deed was to prevent a forfeiture of the land. There was no consideration other than that purpose. After the deed was made there was no change in the method of running the ranch or in the management of it. For two years after the deed was made the taxes on the lands conveyed were paid with funds of the Cattle Company, as were the expenses of the upkeep and operation of the ranch and interest due to the state of Texas. Reference will be made to testimony given by Reid on his cross-examination.

Judge Miller's testimony was to the following effect: As he understood from conversation with Reid and Baldridge, the reason for the deed being executed was that they had been advised by Mr. Caldwell that they were likely to lose their lands by reason of the title thereto being in the Cattle Company, a corporation, and that they desired to get the title in themselves, to avoid possible complications with the state. Witness advised Reid and Baldridge that he did not agree with Mr. Caldwell as to the construction of the statute the latter had in mind, but they wanted to take Mr. Caldwell's opinion rather than that of the witness. Witness advised them that if the title was transferred to them there probably would be no attack made on it by the state, if it could be attacked while in the corporation, which witness thought could not successfully be done.

We do not think that the above-recited testimony, or any part of it, standing by itself, is inconsistent with the conclusion that the deed in question was intended to have the effect of making the grantees the beneficial owners of the lands described. From the fact that the motive for making the deed was to prevent a forfeiture because of corporate ownership, it by no means follows that there was an absence of intention to effect a change from corporate to individual ownership. It well may be supposed that an effect on Reid and Baldridge of the fear or apprehension that the title to the school lands might be forfeited if the corporate ownership was continued would be to move them to get the real, not merely the apparent, ownership in themselves individually, if that could be done, and that they would conclude that the supposed peril would the more effectually be removed by the corporation divesting itself wholly of ownership. There was no evidence indicating that there was anything in the then existing situation to prevent that being accomplished.

So far as appears, a transfer to Reid and Baldridge of the ownership of the lands embraced in the deed did not have the effect of making the Cattle Company insolvent, or of preventing the continuance by it of the business in which it was engaged. It retained the ownership of other assets, including the cash capital with which it started business, or the property in which it had been invested. There is nothing to prevent a corporation carrying on a cattle business on lands belonging, not to it, but to some or all of its stockholders. Only a then existing creditor of the corporation would be entitled to raise an objection to the

payment with money of the corporation of the taxes on land used in its business, but belonging to the two individuals who owned all the stock of the corporation. It is not disclosed that any one who was a creditor of the corporation when such use was made of its money was harmed thereby or had any occasion to complain.

If the testimony given by Reid on his direct examination properly could be regarded as having a tendency to prove that the deed in question was not intended to have the effect of changing the beneficial ownership, other evidence adduced was such as to impair its probative value to that end. It was brought out on Reid's cross-examination that his conduct after the deed was made was inconsistent with the existence of an understanding on his part that the lands described continued to be the property of the corporation. In April, 1914, he returned for taxation the lands described in the deed as property owned by Reid and Baldridge. That was the first return of the property for taxation made by him after the date of the deed. In June, 1914, he made a warranty deed to Baldridge of an undivided one-half interest in those lands; the consideration received from Baldridge including a conveyance by the latter of lands owned individually by him, and which never belonged to the Cattle Company. So far as appears, nothing done by either Reid or Baldridge, after the deed of December 7, 1911, was made, was inconsistent with their individual ownership of the lands it embraced. Their conduct with reference to the lands did not indicate the existence of an intention or consent of either of them to hold the lands in trust for the Cattle Company after the deed was made by the latter. The conclusion is that the evidence adduced was wholly insufficient to show the existence of the trust alleged. To say the least, the evidence fell far short of clearly and convincingly showing that the making of the deed of December 7, 1911, was accompanied by an intention on the part of the grantees to hold the lands described in trust for the grantor.

[5] As to lands the title to which did not pass from the Cattle Company until the execution by it of the deed of August 25, 1914, the decree appealed from can be sustained on the ground that the Cattle Company then was insolvent, and its conveyance was not supported by such a consideration as would make the transaction valid as against the grantor's then existing creditors.

The decree is reversed, in so far as it adjudged that the Cattle Company was the beneficial owner of the lands described in the deed of December 7, 1911. It is affirmed in so far as it relates to lands described in the deed of August 25, 1914, of the Cattle Company to Baldridge, which had not previously been conveyed by the Cattle Company.

Affirmed in part; reversed in part.