THORP, TRUSTEE, ET AL. *v.* OGLE COAL COMPANY ET AL.

[No. 12,240.   Filed October 8, 1926.   Rehearing denied January 14, 1927.   Transfer denied December 19, 1929.]

*James E. Piety, Chester Y. Kelly, James W. Noel, Hubert Hickam, Alan W. Boyd* and *Robert D. Armstrong,* for appellant.

*Cooper, Royse, Bogart, Gambill & Crawford* and *Shirley, Whitcomb & Dowden,* for appellees.

NICHOLS, J.—Action by appellant as trustee under a trust agreement hereinafter described, against appellee, for the benefit of certain named *cestuis,* who were all the stockholders of appellee Sugar Valley Company on Sep-

tember 11, 1920. The second amended complaint, upon which the issues were formed, was in five paragraphs, each of which alleged that, on September 11, 1920, appellee Sugar Valley Coal Company, by a resolution of its board of directors, and by a bill of sale executed immediately thereafter, assigned to appellant, as trustee for its then stockholders, all debts, accounts and claims owing to said appellee Sugar Valley Coal Company on September 1, 1920, with the duty to collect the same, to pay therefrom all indebtedness of said appellee Sugar Valley Coal Company incurred prior to September 1, 1920, with certain exceptions, and to divide the net proceeds among the said stockholders pro rata, and that appellant brings this suit as such trustee. The first two paragraphs declared separately on two checks in the amount of $12,254.24 and $750.01 respectively, which were executed and delivered by appellee Ogle Coal Company to appellee Sugar Valley Coal Company and all interest in which was assigned by the Sugar Valley Coal Company to appellant as such trustee, who has ever since been the owner thereof. The third paragraph declared on an account for coal sold and delivered by appellee Sugar Valley Coal Company to appellee Ogle Coal Company, in the amount of $13,004.25, all interest in which was likewise assigned to appellant as such trustee. The fourth paragraph declared on money paid by appellant as such trustee to the use of appellee Ogle Coal Company, in the amount of $770.86. The fifth paragraph declared on money paid by appellee Sugar Valley Coal Company to the use of appellee Ogle Coal Company in the same amount, all interest in which indebtedness was assigned to appellant as such trustee.

Appellee Sugar Valley Coal Company, which was made a party defendant in order to answer to its interest, if any, in the said checks, accounts and indebtedness, made no answer and filed no pleadings.

By its answer, appellee Ogle Coal Company, in addition to a general denial, asserted against appellant, by way of equitable set-off, a claim against appellee Sugar Valley Coal Company for damages for the breach, subsequent to said assignments, of a contract under which appellee Sugar Valley Coal Company agreed to ship coal to appellee Ogle Coal Company for a period of one year at an agreed price, which damages were liquidated by a contract between appellees, entered into subsequent to said breach.

There was a trial which resulted in a finding and judgment for appellees. Appellant's motion for a new trial was overruled, and this appeal followed.

The errors assigned are the court's action in overruling the respective demurrers to the second and third paragraphs of answer of the Ogle company to each of paragraphs two, three and five of the complaint, and in overruling appellant's motion for a new trial.

It appears by the evidence which is within the issues that the Sugar Valley Coal Company was a corporation with an authorized capital stock of $50,000, divided into 2,000 shares having a par value of $25 per share. Approximately $39,000 of the stock was issued and the remainder was treasury stock. The Sugar Valley Coal Company, in April, 1920, and for several years, had been owner of a coal mine in Vigo county, Indiana, located about three miles west of Terre Haute. The mine had a capacity of between 200 and 300 tons per day. On April 22, 1920, the company entered into a contract with Ogle Coal Company, engaged in the business of selling coal, under which contract the Sugar Valley Coal Company agreed to sell to the Ogle Coal Company 200 tons per day of the coal produced at its mine for $2.85 per ton and to permit Ogle Coal Company to sell, on a commission basis, as a broker, all the coal produced in excess of 200 tons per day for the best price obtainable.

This contract was for a period of one year and was carried out by both of the parties until September 11, 1920. The prices obtainable for coal on the open market were much in excess of the contract price provided for in said contract and this condition continued until December, 1920. Appellant was, from the time such contract was signed until September, 1920, secretary and treasurer and general manager of the Sugar Valley Coal Company. On July 31, 1920, the directors of the Sugar Valley Coal Company assigned all the debts, claims and accounts of the company to appellant in trust for the stockholders of such company. The company was not at the time insolvent, such transfer did not make it insolvent, nor did it thereafter, until long after September 11, 1920, if at all, become insolvent. In August, 1920, substantially all of the stockholders of Sugar Valley Coal Company decided to sell their stock in the company and appointed appellant their agent.

Shortly thereafter, Frank C. Jones entered into negotiations with appellant for the purchase by him of said stock. After some negotiation, appellant, as agent, on August 18, 1920, entered into a written contract with Jones for the purchase by him of said stock then outstanding, under the terms of which contract Jones was to pay appellant, as agent for the stockholders, $50,000. As a further provision of the contract between appellant as agent and Jones, appellant, as agent, agreed "to pay all of the debts and obligations of Sugar Valley Coal Company due or in force on the date of the transfer of stock," with certain stated exceptions, and the contract further provided that appellant, as agent, "shall collect all debts and claims due or owing Sugar Valley Coal Company arising since July 31, 1920, to and including the date of the transfer of the above mentioned shares of stock." The contract further provided that the stock represented by appellant as agent was to be paid

for within 30 days and the stock transferred any time before October 31, 1920.

A few days after this contract was signed, Jones contracted for the sale of the output of the mine of the Sugar Valley Coal Company with persons other than Ogle Coal Company.

About August 26, Jones met with appellant for the purpose of closing up the purchase of the stock. At this meeting, it is averred, and there is some evidence to that effect, that Jones first learned of the contract between Ogle Coal Company and Sugar Valley Coal Company, and then insisted that, under the agreement, appellant was obliged to get rid of the Ogle Coal Company contract, and said that he would not and could not carry it out. They then went first to see an agent of the Ogle Coal Company and sought to obtain cancellation of the contract, and appellant the next day saw the vice-president and general manager of the Ogle Coal Company and told him that they had a purchaser for the Sugar Valley Coal mine at a very favorable price, but that the purchaser would not take the mine with the Ogle contract outstanding, and could not do so at the price being paid; that the present management was losing money on this contract and would not be able to carry it on much longer; that the company was insolvent, and that, if the purchasers went ahead with their purchase, they would not carry it out, and appellant requested the cancellation of the contract so that the sale of the mine would go through. But the vice-president refused to cancel the contract. After this interview, appellant met Jones and told him that the Ogle Coal Company would not give up the contract, and offered to call off the contract between himself and Jones for the purchase of the stock, but Jones said that he was in a position where he would have to go through with the purchase. September 1, 1920, Jones told appellant that

he was ready to close the deal. Appellant then asked Jones if he intended to carry out the contract between the Ogle Coal Company and the Sugar Valley Coal Company, and Jones said he did not. Appellant then refused to close the deal at that time, as they had about $11,000 coming from the Ogle Coal Company which was not due until the 9th or 10th of September, and that they did not want the contract breached until they had received the checks from the Ogle Coal Company. It was then agreed that the transfer of the stock should be postponed until September 11, 1920, and that Jones should receive all of the profits of the business between the 1st and 11th of September. An indorsement to that effect was accordingly made on the written contract. The Ogle Coal Company mailed its check to the Sugar Valley Coal Company in payment for coal received by it in August, on September 9, also a bonus check which was without any consideration, on September 10, which checks were received by the Sugar Valley Coal Company September 10 and 11 respectively. Immediately after receiving the second check, appellant, as secretary and treasurer of the Sugar Valley Coal Company indorsed the checks and deposited them in the bank to the credit of the Sugar Valley Coal Company, then, as secretary and treasurer, drew a check for the entire account of that company on deposit, payable to himself as agent. Immediately thereafter, the old directors of the Sugar Valley Coal Company met and passed a resolution to transfer all of the claims and debts due to the Sugar Valley Coal Company on September 1, and all cash of the company, to appellant in consideration that he make reasonable effort to collect the claims, accounts and cash, and pay from the proceeds the debts and obligations of the company due September 1, 1920, and to distribute the surplus, if any, among the stock-

holders of date of September 1, 1920. At the same time, they executed an assignment to appellant of all such debts, claims and accounts. Thereupon, the old directors and officers of Sugar Valley Coal Company resigned, and Jones, his wife, and Mr. Meredith, a nominee of Jones, were elected directors; Jones was elected president, and Meredith secretary-treasurer.

Appellant and such directors were at all times acquainted with the amount of indebtedness of the company, and were at all times acquainted with the amount and value of the accounts and debts due it. On September 11, they knew that the value of the debts and accounts so assigned exceeded the amount of debts to be paid by more than $27,000. September 11, 1920 was on Saturday, and on Monday morning, when the Ogle Coal Company telephoned its billing instructions to the Sugar Valley Coal Company, it was informed by Jones that he did not recognize the contract between the two companies, and that no more coal would be shipped to Ogle Coal Company or on its instructions. Appellant contends that the Ogle company was so informed before this time. We do not see that it makes any difference. No more coal was billed by the Sugar Valley Coal Company on account of the Ogle Coal Company until after September 16. On September 13, after being so advised that the contract would not be further recognized, the Ogle Coal Company stopped payment on said checks. These checks were returned to the bank in which they had been deposited, and the cashier of the bank, on September 15 or 16, returned the checks to appellant, believing at the time that he was still the secretary-treasurer of the Sugar Valley Coal Company.

On September 16, Jones, then the president of Sugar Valley Coal Company, and his attorney met with the vice-president and the secretary of the Ogle Coal Company, and, after some negotiations, an agreement was

reached between the parties that the Ogle Coal Company would settle with the Sugar Valley Coal Company for the breach of said contract for $16,691.31, being the amount due from the Ogle Coal Company for coal theretofore shipped to it at the contract price, as liquidated damages, and the agreement of the Sugar Valley Coal Company to ship to the Ogle Coal Company during the remainder of the period covered by the contract 100 tons per day. Thereafter, the Sugar Valley Coal Company did ship to the Ogle Coal Company 100 tons per day, but the Ogle Coal Company has never received payment of the liquidated damages agreed upon.

Numerous questions are considered in presenting the respective errors, but, as we view this case, we need give consideration to but two of them. It does not appear by the second paragraph of answer that the Sugar Valley Coal Company was insolvent at the time of the transfer to appellant on July 31, 1920, and thereafter on September 11, 1920 by the directors of said company of the debts, claims and accounts due it, as averred in the answer; on the contrary, it clearly appears, both from averment and fair implication, that such company was at said time solvent, and that the transfer of the accounts, claims and debts due it did not make it insolvent. It appears therein that all the parties to the transfer knew that the value of such claims, debts and accounts was $20,000 in excess of the debts due by the company. It was a part of the consideration for this transfer that the proceeds of these debts, accounts and claims due the company were to be applied to the payment of its obligations and the balance was to be distributed *pro rata* among the stockholders. On August 18, 1920, the stockholders, through appellant, sold their stock in the company, free from the debts of the company, for $50,000, which was at a price of $31.78⅔ for a share of the par value of $25. While there is an averment in the third

paragraph of answer that, as a result of the assignment of the debts, claims and accounts, the company became insolvent, the specific averments of such third paragraph do not sustain the conclusion of the pleader. In addition to the facts averred in the second paragraph of answer, it is averred in the third paragraph, that after the assignment and transfer of the claims, debts and accounts as averred in the second paragraph, the property of the company consisted of a coal mine and tipple in Vigo county, and seven acres of workable coal, together with the equipment of the mine. It is to be noted, as hereinafter appears, that there was much more tangible property than is here mentioned. All of the property so remaining, of whatever kind and character, was represented by the stock of the company, which, in a few days after the assignment, sold for a consideration of $50,000, free from the debts of the company, which were to be paid from the proceeds of the debts, claims and accounts due the company, which were of the value of $20,000 more than the company's obligations. It further appears by the third paragraph of answer, which was filed March 16, 1923, or about two and one-half years after the assignment and transfer aforesaid, that the company was still a going concern, and engaged in the operation of a coal mine in Vigo county. We learn from the evidence that this coal mine was the same one that the company had at the time of the assignment and transfer of the debts, claims and accounts due it.

From the evidence, it appears that, after the assignment and transfer, there were no debts of the corporation except taxes and for some equipment not yet delivered; that the company had realized a net profit of $21,500 from April 22, 1920, to September 11, 1920; that it had a coal mine of 50 to 60 acres of minable coal, 15 acres of minable pillars, mine tipple and equipment,

seven acres of surface in the vicinity of the mine, a railroad switch, and real estate in Terre Haute, all of which property was of the value of more than $50,000. It cannot be successfully contended, under these answers, and under the evidence, that the company was insolvent at the time of the assignment and transfer of the debts, claims and accounts, or as a result thereof, included in which were those sued on in the first, second, third and fifth paragraphs of complaint.

It is a well-established rule of law, as stated in 14 C. J. 523, that a corporation while solvent and a going concern, holds its property like an individual free from the touch of its general creditors, and it may dispose of its property as seems best to it, subject, of course, to the provisions of its charter, and such other restraints as the law may impose, one of which is not that it may not dispose of a part of its property when it has sufficient left to discharge its obligations. *Hollins* v. *Brierfield, Coal, etc., Co.* (1893), 150 U. S. 371, 381, 383, 14 Sup. Ct. 127, 37 L. Ed. 1113; *McDonald, Rec.,* v. *Williams* (1899), 174 U. S. 397, 401, 19 Sup. Ct. 743, 43 L. Ed. 1022; *New Hampshire Sav. Bank* v. *Richey* (1903), 121 Fed. 956, 959; *City of Ft. Worth* v. *National Park Bank* (1919), 261 Fed. 817; *Harle-Haas Drug Co.* v. *Rogers Drug Co.* (1911), 19 Wyo. 35, 113 Pac. 971, Ann. Cas. 1913E 181.

It is averred in each of the second and third paragraphs of answer that, on September 16, 1920, which was about two and one-half months after the original assignment and transfer aforesaid, and five days after the transfer by the directors of the company, the two coal companies, appellees, entered into a compromise agreement by which they undertook to adjust the damages growing out of the breach of the contract to deliver coal by the Sugar Valley Company to the Ogle company, and to agree as to future

shipments of coal. By this compromise agreement, the Sugar Valley company agreed to ship to the Ogle company 100 tons per working day at $3.10 per ton, which was 25 cents above the price originally agreed upon, and the damages growing out of the breach were fixed at $16,691.31. It is to be remarked that this amount happens to be the exact amount due for coal furnished by the one company to the other for the month of August, and 11 days of the month of September, 1920. We are impressed that the amount of the damages suffered was given but little consideration, but that the executory feature of the compromise, under which 100 tons of coal per working day was to be furnished, was given primary consideration. Whatever may have been the process by which the amount of damages was liquidated, appellant, who was in no way a party to the compromise agreement, seems not to be satisfied that the correct amount was determined, for he presents figures from the market prices thereafter prevailing which indicate that the Ogle company suffered no damages by reason of the breach. Appellee argues that appellant cannot properly go behind the compromise settlement by which the damages were liquidated at $16,691.31, thereby helping us to determine the theory of the second and third paragraphs of answer as to the damages it had a right to set off to be the amount liquidated in the agreement. It would seem that, if appellant was expected to pay, he should in some way have been consulted as to the amount. If he can be held for these liquidated damages, then, if thereafter, the Sugar Valley company, under the operation and control of Jones, had breached the agreement to furnish 100 tons of coal per working day, appellant could have been held for the breach as well as for the liquidated damages, all under a contract made after the assignment and transfer of debts, claims and accounts to him, and after he had retired from the

company, and had nothing to do with its management. Compromise agreements do not bind those who are not parties to them. 12 C. J. 344; *Whisnand, Admr.*, v. *Small* (1878), 65 Ind. 120, 127. We do not determine as to whether it was binding between the parties, but, as to this question, see 12 C. J. 322, 1 C. J. 567; *Moon* v. *Martin* (1890), 122 Ind. 211, 23 N. E. 668; *Bandman* v. *Finn* (1906), 185 N. Y. 508, 78 N. E. 175, 12 L. R. A. (N. S.) 1134.

Under the executory terms of the compromise agreement, the Sugar Valley company thereafter furnished coal to the Ogle company for which the Ogle company became indebted from time to time for large amounts, but no effort, so far as appears, was ever made to collect the amount of the damages, either liquidated or unliquidated. Clearly, it appears that by entering into the compromise agreement, the Ogle company must have believed that it had a claim for damages against the Sugar Valley company. Even if appellant had been liable in any way, the Sugar Valley company must have been primarily liable, and yet, appellee Ogle company made no attempt whatever to collect its claim from the Sugar Valley company during the seven months that coal was being furnished to it at the rate of 100 tons per working day, nor thereafter for nearly three years, when it seeks to enforce a set off against appellant, alleging the insolvency of the Sugar Valley company. If, for prudential reasons, dealing as it was with the Sugar Valley company, it chose not to enforce its claim against that company as the principal debtor, it may not now come into court with an equitable set off against appellant, even if appellant, under any conditions presented, might be liable. *Ryason* v. *Dunten* (1905), 164 Ind. 85, 73 N. E. 74. The maxim that equity aids the vigilant, not those who slumber on their rights, expresses the attitude of equity toward laches and stale

demands. 21 C. J. 193. 1 Pomeroy, Equity Jurisp. 738, 739, 745, 761.

The motion for a new trial should have been granted, and the respective demurrers to the second and third paragraphs of answer should have been sustained.

Reversed.