HOLSAPPLE ET AL. *v.* SHRONTZ.

[No. 9,427.   Filed October 24, 1917.]

1. TRUSTS.—*Creation.*—The word "trust" is frequently employed to indicate duties, relations and responsibilities which are not strictly and technically trusts. p. 396.

2. TRUSTS. — *Express Trust.* — *Creation.* — The term "express trust" signifies a trust created by the direct and positive acts of the parties as evidenced by some deed, will, or other instrument, wherein the language employed either expressly or by plain implication evinces an intention to create a trust. p. 396.

3. TRUSTS. — *Implied Trusts.* — *Creation.* — Implied trusts are those which, without being expressed, are deducible from the relation of the parties and the nature of the transaction as matters of intent, or which by operation of law are deduced from transactions of the parties as a matter of equity independent of the particular intention of the parties.   p. 397.

4. TRUSTS.—*Creation.*—*Intent.*—The creation of a trust does not depend upon the use of any particular language or form of expression, but upon the meaning of the language employed when fairly construed in the light of the circumstances, relation, and situation of the parties, and, if the intent to create a trust is clear and the essential elements may be fairly deduced from the language used, the trust will not fail for the lack of more adequate expression.   p. 397.

5. TRUSTS.—*Express Trusts.*—*Creation.*—*Requisites.*—When the settlor, the trustee, the *cestui que trust*, the property transferred to the trustee, and the object to be attained, all appear with reasonable certainty from the writing, the requirements of the law are satisfied and an express trust is thereby established which will be recognized and enforced.   p. 397.

6. TRUSTS.—*Express Trusts.*—*Creation.*—*Deed.*—A deed for land from a mother to her son whereby he agreed to use the rentals of the property to support the family and to educate the girls, and, if finally sold, to divide the price received therefor equally among the then living heirs or members of the family if of age, otherwise to hold such shares until the minors attained their majority, creates an express trust in the land conveyed, for the purpose designated.   p. 398.

7. TRUSTS. — *Express Trusts.*—*Trustee.* — *Powers.*—*Violation of Trust.*—Where a duly recorded deed of land from a mother to son stipulated that he was to use the rentals of the property to support the family and to educate the girls and, if sold, divide the money received equally among the members of the family, it was in contravention of the trust created by such conveyance for the son to convey the property as an individual and not as trustee, and his deed was void and the grantee did not thereby acquire any title as against the *cestui que trusts*, in view of §4016 Burns 1914, §2973 R. S. 1881, providing that every sale, conveyance, or other act of a trustee, in contravention of a trust, shall be void, and §4014 Burns 1914, §2971 R. S. 1881, providing that the record of a trust shall be deemed actual notice thereof to every person claiming under a conveyance made after such recording.   p. 399, 400.

8. TRUSTEES.—*Powers of Trustee.*—*Barter or Exchange of Trust Property.*—Power to sell trust property does not authorize a trustee to barter or exchange it for other property, and such

power can only be exercised in conformity with the requirements of the instrument by which the trust is created and in furtherance of the ends to be attained by the creation of the trust.  p. 399.

9. TRUSTS.—*Express Trusts.—Validity.—Interest of Trustee.*— The fact that the trustee named in a deed creating a trust is also given a personal interest in the real estate will not defeat the trust.  p. 400.

From Martin Circuit Court; *James W. Ogdon,* Judge.

Action by Vessey Holsapple and others against Leroy Shrontz.  From a judgment for defendant, the plaintiffs appeal.  *Reversed.*

*Frank E. Gilkison,* for appellants.

*Fabius Gwin,* for appellee.

FELT, J.—This suit was brought by appellants against appellee by a complaint in three paragraphs. The first paragraph was for partition of 240 acres of real estate in Martin county, Indiana, in which it was alleged that the plaintiffs Vessey Holsapple and Joseph Elliott, and the defendant, Shrontz, each owned the undivided one-fourth, and plaintiffs Annie Gerkin and Virgil Gerkin each the undivided one-eighth part of the real estate described in the complaint; that Stoie P. Holsapple was the husband of Vessey Holsapple.

The second paragraph alleges in substance that Vessey Holsapple, Joseph Elliott and Fay Elliott were children of Charity Elliott; that Annie and Virgil Gerkin were her grandchildren, and the aforesaid persons were the only heirs at law of said Charity Elliott, when she departed this life in 1911; that at and prior to the death of Charity Elliott, Fay Elliott was the son and only adult child of Charity Elliott; that the other children and grandchildren aforesaid were minors, and all lived together as members of the family of Charity Elliott, their mother and grandmother; that said Charity had received from her husband a convey-

ance of the aforesaid real estate prior to his death, and the same was the only real estate owned by her; that shortly prior to June, 1911, Charity Elliott was ill with tuberculosis and moved with her family from Martin county, Indiana, to Weld county, Colorado, for her health; that on June 17, 1911, she was very ill and believed she was soon going to die; that to save costs and expenses of administration, and to protect her minor children, she executed a conveyance to her son Fay Elliott of her personal property and the real estate aforesaid; that the property was conveyed by deed duly executed and was in trust for the minor children and grandchildren of said Charity Elliott, which trust was created by the language of said deed as follows:

> "Said party of the second part agreeing to use the rentals of said property to support the family and to educate the girls and if finally sold, to divide the price received therefor equally among the then living heirs or members of the family if of age, otherwise hold said shares till minors become of age."

That said Charity Elliott died soon after she executed said conveyance; that the deed to Fay Elliott was shortly thereafter duly recorded in the office of the recorder of Martin county, Indiana; that in January, 1913, Fay Elliott, by deed of general warranty, attempted to convey all of said real estate to defendant Leroy Shrontz; that none of the plaintiffs joined in the execution of the deed to said grantee. The paragraph contains detailed averments about the sale of timber, the collection of rents, the wrongful possession and use of all of the farm by Shrontz, the claim of Shrontz to own all the land by virtue of the conveyance to him by Fay Elliott, and alleges the interest claimed by the plaintiffs; that the real estate is not susceptible of partition without damage, etc. The prayer is for an ac-

counting, for a decree of partition, and the appointment of a commissioner to sell the land and distribute the proceeds to the several owners in accordance with their respective interests.

The third paragraph is substantially the same as the second. It is also averred therein that the property of Charity Elliott was conveyed by her to Fay Elliott without any consideration and in trust for her minor heirs; that she died about four hours after she executed the deed. The prayer asks that a trust be declared and that said Shrontz be charged as holding the property in trust; that a trustee be appointed for an accounting and for all proper relief.

The deed to Fay Elliott is set out in full as an exhibit with the second and third paragraphs. Issues were joined by general denials. The court found for the defendant and adjudged that plaintiffs take nothing by their action. Appellants moved for a new trial. The motion was overruled and this appeal prayed and granted. The error assigned and relied on for reversal is the overruling of appellants' motion for a new trial. A new trial was asked on the ground that the decision of the court is not sustained by sufficient evidence; that it is contrary to law.

The deed executed to Fay Elliott by his mother purports to have been executed for a consideration of one dollar and "other valuable considerations." It is in the long form of bargain and sale with the usual covenants. The parties agree that the legal title is conveyed to Fay Elliott, but differ as to the effect of the clause above set out. Appellee contends that it only indicates the motive of the grantor in making the conveyance, and that it in no sense created a trust or affected the right of the grantee, Fay Elliott, to sell and convey the property as his own. Appellants contend that the language of the deed when considered in the light of the situation

and relation of the parties as shown by the undisputed facts of the case, clearly indicates the creation of a trust, by which Fay Elliott became trustee for the other heirs and members of his mother's family; that his conveyance of the legal title cannot defeat their right to the three-fourths part of such land; that he had no right to sell and convey the legal title to all of said real estate except in execution of the trust, in which event the deed contains provisions by which the other heirs of his mother shall have their interest in the land preserved to them; that appellee is charged by the record with notice of the contents of the deed to his grantor and the existence of the trust thereby created; that in no event could Fay Elliott dispose of the land in exchange for other real estate and personal property.

Fay Elliott testified in substance that he and the other heirs of his mother were living as members of her family when the deed was made; that she died about one hour after its execution; that it was executed in Colorado and he took it with him to Indiana when his mother was taken back for burial; that he caused it to be recorded four or five days after its execution; that he sold and conveyed the land to appellee as his own individual property and received therefor $1,100 in cash, two dwelling houses and a postoffice and store building with its contents, at Mier, Indiana; that he received the rents while he had the farm and used them in caring for the family according to his agreement; that his mother had no other property to his knowledge except that transferred to him by the deed aforesaid.

As presented to this court, there is no dispute about the facts in any way bearing on the question of the creation of a trust or the showing of the grantor's motive, as the case may be, the determination of which the parties concede will control our decision. The question turns upon the meaning of the clause in the

deed above set out relating to the agreement of the grantee as to the rentals, the support of the family, the education of the girls, the sale of the property and the disposition of the proceeds.

The word "trust" is frequently employed to indicate duties, relations, and responsibilities which are not strictly and technically trusts. In its technical

1. application the word has been variously defined.

In 1 Perry on Trusts (6th ed.) §2, the term is defined to signify an obligation upon a person arising out of a confidence reposed in him to apply property faithfully and according to such confidence. The same author in §24 says trusts are divided in reference to their creation into express, implied, resulting, and constructive trusts; that an express trust is generally created by instruments that point out directly and expressly the property, persons and purposes of the trust. In 2 Story's Equity Jurisprudence (13th ed.), §964, the learned author states in substance that in the broad sense in which the term "trust" is employed in English jurisprudence, it is an equitable right, title or interest in property real or personal, distinct from the legal ownership thereof. That the legal owner holds the direct and absolute dominion over the property, but the income, profits or benefits thereof, though in his hands, belong wholly or in part to others; that the legal estate is thus made subservient to certain uses, benefits or charges in favor of others; and these uses, benefits or charges constitute the trust which courts of equity will compel the legal owner as trustee to perform in favor of the *cestui que trust,* or beneficiary.

The term "express trust" signifies a trust created by the direct and positive acts of the parties

2. as evidenced by some deed, will, or other instrument, wherein the language employed either ex-

pressly or by plain implication evinces an intention to create a trust.

Implied trusts are those which, without being expressed, are deducible from the relation of the parties and the nature of the transaction as matters of
3. intent, or which by operation of law are deduced from the transactions of the parties as a matter of equity independent of the particular intention of the parties. 1 Perry, Trusts (6th ed.) §§73-82; 39 Cyc 17, 24, and cases cited; 28 Am. and Eng. Ency. Law 848 *et seq.*

The creation of a trust does not depend upon the use of any particular language or form of expression, but upon the meaning of the language employed
4. when fairly construed in the light of the circumstances, relation, and situation of the parties. If the intent to create a trust is clear and the essential elements may be fairly deduced from the language employed, the trust will not fail for the lack of more adequate expression. *Grant Trust, etc., Co.* v. *Tucker* (1911), 49 Ind. App. 345, 352, 354, 96 N. E. 487; *Gaylord* v. *City, etc.* (1888), 115 Ind. 423, 428, 430, 17 N. E. 899; *Anderson* v. *Crist* (1888), 113 Ind. 65, 67, 15 N. E. 9; 1 Perry, Trusts (6th ed.) §§82, 83.

When the settlor, or person creating the trust, the trustee, or person who takes and holds the legal title to the property for the benefit of others, the *cestui*
5. *que trust*, or person for whose benefit the trust is created, the property transferred to the trustee, and the object to be attained, all appear with reasonable certainty from the writing, the requirements of the law are satisfied and an express trust is thereby established, which the courts will recognize and enforce. *Gaylord* v. *City, etc., supra;* §4012 Burns 1914, §2969 R. S. 1881; 1 Perry, Trusts (6th ed.) §§82, 83.

The language of the deed in question cannot fairly

be construed as precatory, or as indicating only the motive which prompted its execution. It shows 6. an obligation placed upon the grantee to do certain specified things. The reference to a sale, though indefinite as to the conditions or time of such sale, nevertheless clearly shows that if a sale should be made, the grantee, or trustee as he became when he accepted the conveyance, was required to divide the proceeds therefrom "among the then living heirs or members of the family, if of age, otherwise to hold said shares till minors become of age," when by the clearest possible implication he was required to pay the same over to such person or persons. The grantee was the son of the grantor and a member of her family. The provision therefore clearly indicates that upon sale of the property he was entitled to his equal share of the proceeds, and no more, along with the other heirs or members of the family of the grantor. The sale of the property and the distribution of the funds as indicated by the language employed would have secured to each heir his or her interest in the land and ended the trust. The language of the deed when fairly construed is not open to any other inference or reasonable conclusion than that above announced. When viewed in the light of the circumstances, relations and situation of the parties, as we have the right, and are in duty bound, to do, the conclusion is inevitable that a valid express trust was created in the land conveyed, for the purposes designated in the deed in favor of the children and grandchildren of the grantor, for the faithful execution of which Fay Elliott was bound as trustee. This conclusion is fully supported by the principles of law applicable to the case and by the decided cases dealing with the same or closely analogous questions. 1 Perry, Trusts (6th ed.) §§82, 83, 117; *Anderson* v. *Crist, supra; Elliott* v. *Elliott* (1889), 117 Ind. 380, 20 N.

E. 264, 10 Am. St. 54; *Gaylord* v. *City, etc., supra; Allen* v. *McGee* (1901), 158 Ind. 465, 62 N. E. 1002; *VanGorder* v. *Smith* (1885), 99 Ind. 404; *South* v. *South* (1883), 91 Ind. 221, 46 Am. Rep. 591; *John* v. *Bradbury* (1884), 97 Ind. 263.

7. Though Fay Elliott held the legal title to the real estate conveyed to him by his mother, yet the language of the deed, the relation of the parties, and the circumstances under which it was executed show, by plain implication at least, that he held such title subject to the equitable interest in the land of the *cestui que trusts,* named in the deed. The statements and conduct of Fay Elliott, and especially his conveyance to appellee, were in contravention of the trust. His claim of personal ownership of the real estate and the right to convey the same as his individual property free from the interests of the *cestui que trusts* was a denial of the trust and a violation of his duty as trustee. The conveyance of the trust property as an individual and not as a trustee, and the absence of any reference to the trust in the deed by which Fay Elliott conveyed the land to appellee, all tend to show an attempt to repudiate the trust.

8. Power to sell trust property does not authorize a trustee to barter or exchange it for other property. Such power can only be exercised in conformity with the requirements of the instrument by which the trust is created and in furtherance of the ends to be attained by the creation of the trust. 22 Am. and Eng. Ency. Law 1150; *Woodward* v. *Jewell* (1890), 140 U. S. 247, 253, 11 Sup. Ct. 784, 35 L. Ed. 478; *Ringgold* v. *Ringgold* (1826), Har. & G. (Md.) 11, 18 Am. Dec. 250, 255; *Mersman* v. *Mersman* (1896), 136 Mo. 244, 37 S. W. 909, 912; *Haldeman* v. *Openheimer* (1910), 103 Tex. 275, 126 S. W. 566, 568; 39 Cyc 348, 373, 374, 375; *City, etc.* v. *State Bank, etc.* (1865),

16 Ohio St. 236, 88 Am. Dec. 445, 450; *Huntt* v. *Townshend* (1869), 31 Md. 336, 100 Am. Dec. 63, 64; *Marshall* v. *Stephens* (1847), 8 Humph. (Tenn.) 159, 47 Am. Dec. 601.

Section 4016 Burns 1914, §2973 R. S. 1881, provides that: "Every sale, conveyance, or other act of a trustee, in contravention of a trust, shall be void."

7. Applying the statute to the facts of this case, it is clear that the conveyance to appellee was in contravention of the trust shown by the deed to Fay Elliott; that as to appellants the deed was void, and appellee did not thereby acquire any title as against the *cestui que trusts.*

The deed to Fay Elliott was duly recorded and appellee was bound to take notice of its contents. He was thereby notified of the existence and terms of the trust. §4014 Burns 1914, §2971 R. S. 1881. Furthermore, the facts above indicated, the terms of the trade, the real estate taken by Fay Elliott in exchange for the trust property, and the general character of the transaction was such that appellee was bound to know that the trust shown by the deed aforesaid was thereby violated. *Nugent* v. *Laduke* (1882), 87 Ind. 482, 485; *Thomasson* v. *Brown* (1873), 43 Ind. 203; *Orb* v. *Coapstick* (1894), 136 Ind. 313, 36 N. E. 278; *Barrett* v. *Sear* (1891), 128 Ind. 261, 27 N. E. 607.

The fact that Fay Elliott was made trustee by the terms of the deed and was also given a personal interest in the real estate will not defeat the trust.

9. *Allen* v. *McGee, supra,* 470; *Green* v. *McCord* (1902), 30 Ind. App. 470, 472, 66 N. E. 494.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.

Hottel, C. J., Ibach, P. J., Caldwell, Dausman and Batman, JJ., concur.

NOTE.—Reported in 117 N. E. 547. Effect of trustee's having a personal interest in the subject-matter of the trust, Ann. Cas. 1918A 481.