PHILIP F. APPLE AND NANCY A. OAKES *v.* FLOYD L. APPLE, ET AL.

[No. 1270A259. Filed October 14, 1971. Rehearing denied November 17, 1971. Transfer denied February 9, 1972.]

*Marvin E. Clanin,* of Anderson, *Thaddeus R. Spurgeon,* of Oaklandon, for appellants.

*William D. Hall, DeWester, Raftery, Andrews & Hall,* of Indianapolis, for appellees.

SHARP, J.—This is an appeal from a judgment of the Hancock Circuit Court granting summary judgment for the defendant-Appellees, and thereby quieting title to the contested tract of land in the Appellees.

The quiet title suit was a collateral attack by Appellants upon an earlier judgment of the same Court entered in 1928, whereby the Court approved a compromise agreement and

upheld the validity of the Last Will of Mary Edna Addison, deceased grandmother of Mary Rose Apple (Simmons). Contemporaneously with entry of judgment upholding the validity of the Will, the trustee and executor jointly executed a deed purporting to convey the fee simple title to said land to the grantee therein, Mary Rose Apple (Simmons).

Item Eight of the Last Will of Mary Edna Addison contains the provision for creating the trust and the pertinent parts thereof are as follows:

"All the rest, residue and remainder of my estate, real, personal and mixed, wheresoever situate, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, I will, devise and bequeath to Charles H. Cook, of Greenfield, Indiana, absolutely and in fee simple, but nevertheless strictly in trust for the uses and purposes following:

Said trustee shall, at all times, have full, complete and absolute possession and control of all the said trust property, and all of the income thereof, and shall have full and complete power and authority to manage, use, control and possess said trust property in such manner as shall be to the best interest and advantage of this trust, and shall promote the purposes hereof, and produce an income, and for such purpose said trustee shall have full and complete power and authority to sell, to lease, to make investments and re-investments of said trust property, and to allow, pay, compromise, compound, enforce, waive, accept, extend the time of payment, or refer to arbitration any debts or demands whatsoever, which may be owing from, or to, the trust at any time, and to do and perform all other things, and to take such other action reasonably necessary to fully and completely execute this trust, except said trustee shall have no power or authority to sell, encumber, or convey any real estate of this trust otherwise than as hereinafter provided.

The income of this trust shall be used and applied by said trustee for the purpose of keeping the trust property in good condition and repair, and to properly preserve the same, to pay the taxes and assessments legally made, assessed and levied against the trust property, and to pay and satisfy all necessary costs and expenses of this trust. Said trustee shall pay the net income of this trust annually

to my granddaughter, Mary Rose Simmons, as long as she lives, if she survives me, and said trustee may, in his discretion and judgment, pay said income to my said granddaughter, Mary Rose Simmons, at least monthly.

In the event my granddaughter, Mary Rose Simmons, should survive me, said trustee shall permit her to have the use, control and possession of my real estate described in ITEM FIFTH of this, my last will, from the decease of my husband, Joseph N. Addison, if he survives me, and from my decease if he does not survive me and until she becomes twenty-five years of age, or until her death prior to that age, whenever, during said period, she desires the use, possession and control of said real estate for the purpose of residing and making her home thereon, and provided she does do so, and while so residing and making her home on said real estate, as aforesaid, shall be entitled to the rents, issues and profits thereof, and she shall pay all taxes, charges and assessments lawfully made and levied against said real estate, and shall keep said real estate and the improvements thereon in good condition and repair.

In the event my said granddaughter, Mary Rose Simmons, should survive me, and become twenty-five years of age, then at that time, said trustee shall convey to her all of the real estate of this trust for the period of her life, and this trust shall in all other respects continue as herein provided.

In the event my said granddaughter, Mary Rose Simmons, should survive me, and then become deceased, leaving a descendant or descendants, surviving her, then at that time this trust shall end, and said trustee shall convey, assign, transfer and deliver all the trust property to the said descendant or descendants, of my said granddaughter living at the time of her said decease, absolutely, forever and in fee simple, and per stirpes."

As indicated by the above provision, a trust was created whereby the decedent's granddaughter, Mary Rose Apple (Simmons), upon reaching the age of twenty-five, was to receive a life estate in all the realty, and upon her demise, the trust was to terminate and the trustee was to convey the fee simple title to the trust property to the descendants of the deceased granddaughter.

Subsequent to the will being admitted to probate, the granddaughter by her next friend, filed a suit in 1928 to set aside the probate and contest the will on the alleged grounds of unsoundness of mind and undue execution. Both the executor and trustee were named as party defendants. Before said proceeding came to trial, all parties thereto reached a compromise agreement for the purpose of settling the litigation and upholding the validity of the will. Contemporaneously with payment of the settlement, made in accordance with the agreement, judgment was rendered in the will contest proceeding upholding the validity of the will and the trust created thereby. The judgment, in so far as applicable, reads as follows:

"And now the court having seen and examined said petition, and being otherwise duly advised in the premises, finds the matters and things stated and set forth in said petition to be true and correct, and that it is to the best interest and advantage of said estate, and of all persons and parties interested therein, to settle and compromise, as stated and set forth in said petition, the certain litigation and cause of action described in said petition, numbered 16750 and now pending trial and final judgment in the Hancock Circuit Court, wherein said Mary Rose Simmons by Fanny F. Spurry her next friend, is plaintiff, and said executor and others are defendants, in which cause of action the said plaintiff seeks and attempts to set aside the probate of said will, and to contest said will on the alleged grounds of unsoundness of mind, and undue execution; and that the prayer of said petition should be granted, and said compromise agreement approved and confirmed and adopted as the judgment of this court.

NOW THEREFORE, it is considered, ordered, adjudged and decreed by the court that said compromise agreement be and the same is now approved and confirmed, and adopted and made the judgment of this court and that said cause of action shall be compromised and settled as stated and set forth in said compromise agreement.

And it is further considered, adjudged and ordered by the court that said executor shall pay as a part of the costs and expenses of said estate of said testatrix, the costs of said cause of action, including the final judgment therein, which payment shall also be made from the said residuary estate of said testatrix.

And it is further considered, adjudged and ordered by the court that said executor join with J. Ward Fletcher as trustee of the trust created by said last will of said testatrix in the execution of a deed conveying the above described real estate to said Mary Rose Simmons.

And it is further considered, adjudged and decreed by the court that the payment of said money, and the conveyance of said real estate and delivery of said specific articles of personal property as hereinbefore provided, shall vest the absolute title thereto in said Mary Rose Simmons, and shall release and discharge said executor of all liability therefor, and he shall be, and he is hereby, given full credit therefor as against his charges and responsibility as such executor.

All of which, is finally ordered, adjudged and decreed by the court."

The appellants herein are the children of Mary Rose Apple (Simmons), who, as her descendants would have acquired title to the land except for the compromise agreement. None of the appellants were alive at the time of the contested proceedings as their mother was then only twelve years of age. The question now before us to decide is whether the appellants are estopped from collaterally attacking the compromise agreement and the final judgment rendered thereon in 1928.

Appellants argue that since the trustee was only authorized to convey a life estate to Mary Rose Apple (Simmons), his conveyance of the fee simple title to a small fraction of the trust corpus was in contravention of his trust and absolutely void. Therefore, the court allegedly did not have jurisdiction to order or approve the same and its judgment is facially invalid. Furthermore, since the trustee breached the terms of his trust, he acted solely as an individual and the beneficiaries are not bound by his alleged representation of their interests.

Primary reliance, in the above argument, is placed upon I.C. 1971, 30-1-9-5, Ind. Ann. Stat. § 56-605 (Burns 1961), which reads as follows:

"Every sale, conveyance or other act of a trustee in contravention of a trust shall be void."

Appellants recognize that the trustee had certain expressed power in relation to the compromise of claims and demands, and they further concede that he had limited implied powers to compromise litigation wherein the validity of the trust itself is challenged. But, they argue that such powers were only operative and valid within the specific limits imposed by the trust itself, and when the trustee violated the express prohibition contained therein, the appellants were not bound by the acts of the trustee in connection with the compromise agreement. They allege that even when the validity of the instrument which confers power unto the trustee is under attack, the trustee is still bound by the instrument, and is limited to actions expressly or impliedly conferred therein.

The principal problem presented by this case is that the trustee was both the party responsible for representing the interests of the unborn beneficiaries, as well as those of the deceased testatrix, and also the party responsible for the conveyance. When the two functions are separate, the authority of the party making the conveyance is generally not an issue, rather, the disposition of the case revolves almost entirely around whether the contingent beneficiaries were adequately represented so as to be estopped from collaterally attacking the former judgment and conveyance.

The disposition of this case ultimately rests on the application of the doctrine of representation by fiduciary, which in its practical application is similar to the doctrine of virtual representation. Perhaps the only distinction is that representation by fiduciary is based, not on the interests of the trustee in the litigation, since he must have no personal interest if he is to represent the beneficiaries; rather, it is based upon the presumption that he will perform his duties to preserve and protect the interests of his beneficiaries in the performance of the duties imposed on him under the trust.

In *Krick* v. *Klockenbrink* (1968), 144 Ind. App. 55, 242 N. E. 2d 848, 850, 851, a case strikingly similar to the one at

bar, the difference being only the type of representation afforded to the contingent beneficiaries, this court quoted language at length from *Groves, et al.* v. *Burton, et al.* (1954), 125 Ind. App. 302, 123 N. E. 2d 705, wherein it stated:

"In quiet title suits and other actions involving the determination of titles, where all parties are before the court that can be brought before it, and the court acts properly as to rights that appear, there being present no element of fraud or collusion, the decision of the court is conclusive as to the state of the title.

To the generally accepted rule there exists an exception born of the justice and necessity of settling the rights of parties in being and the adjudication of property titles with dispatch. It is, of course, an exception to be carefully weighed and applied with the utmost caution. It is generally referred to as the doctrine of virtual representation."

We believe that the above language is equally appropriate to the doctrine of representation by fiduciary and this case. That the doctrine is in fact applicable is best illustrated by *Moll* v. *Goedeke* (1940), 107 Ind. App. 446, 25 N. E. 2d 258, where this court stated:

"The trustees are the representatives of the dead donor in his wishes, and *they also represent the future beneficiaries, who, being as yet unknown, can have no other representatives or protectors.* Before this will is probated, we think that such a trust is itself an interest in the will, or in the question of will or no will, which authorizes the trustee to prove the will and to prosecute a writ of error to reverse an order rejecting it. . . . "Where the trustee represents interests of persons not in being, or their identity is uncertain, the propriety of requiring such trustee to be made party is especially evident." (emphasis supplied)

Appellants do not argue with the rule but do contend that it should only be given effect where the trustee is acting diligently and in such a manner so as to perform his duties under the trust.

However, that is exactly what the trial court decided, at

least by implication, in the will contest proceeding when it found that the settlement and compromise of the litigation was in the best interests of the estate, and all parties and persons interested therein. Appellants wish to substitute their judgment for those of the trustee and the trial court, made some forty-three (43) years earlier and with a deep cognizance of the specific circumstances and salient facts surrounding the litigation.

Compromise agreements, or family settlements have always been especially favored by our courts in order to avoid litigation. *Krick* v. *Klockenbrink, supra, Fender* v. *Phillips* (1915), 59 Ind. App. 85, 109 N. E. 971.

Perhaps the best relevant statement of the policy can be found in *Hadley* v. *Kays,* 121 Ind. App. 112, 98 N. E. 2d 237 (1951) where this court said:

"* * * From all of the circumstances in the evidence, considering the purchase and ownership of the two farms, the actions of the parties with reference to the use and occupancy of the Home place and the Page place and considering the fact that this was an agreement between a mother and her two sons with mutual affection and confidence, and that from the appellant's own testimony that the title was taken in the mother's name in order to make an adjustment of interests of the two boys, it seems to this court that it could be reasonably inferred, as found by the trial court, that the title was to be held in the mother's name until a family settlement was made which would carry into effect the purpose of all of the parties, and that pursuant to such agreement, title to the Hutton farm was taken in the name of the mother. This agreement arose and there was a meeting of the minds and agreement of the parties, the two sons and the mother, prior to the time title was taken in the mother's name. It may be that the agreement once made might cover matters transpiring through a period of years, but this would not destroy the legal effect of the agreement upon the creation of a resulting trust in connection with the deed to the mother."

\* \* \* \* \*

"Family settlements such as are shown by the facts in the case at bar are especially favored by the law, and are up-

held by the courts to encourage and maintain family confidence, and to avoid frauds, and the abuse of such confidence."

The compromise and avoidance of litigation is sufficient consideration to uphold a family settlement, *Knepper* v. *Eggiman* (1911), 177 Ind. 56, 97 N. E. 161, and is binding unless it is shown that it was the result of fraud, mistake, or improper means, *Phelps* v. *Younger* (1853), 4 Ind. 450, or that all the parties were not represented. *Thorp* v. *Ogle Coal Co.* (1929), 90 Ind. App. 508, 153 N. E. 423. While it is true that a trustee, who, either without authorization by the terms of the trust, or without sanction and approval by the courts, makes a sale or conveyance in contravention of his trust, is acting as an individual and therefore, does not bind future beneficiaries, *Holsapple* v. *Schrontz* (1917), 65 Ind. App. 390, 117 N. E. 547, it is only true when neither of the above prerequisites is present or when the court has stepped beyond the bound of its power.

As a general rule it has been stated that courts have no power, with a few exceptions, to dissolve completely a trust before the term for which it was created. *Gibson* v. *Gibson* (1952), 122 Ind. App. 599, 106 N. E. 2d 102. Within the exceptions, which have never been expressly enunciated in full but rather left to the courts in the exercise of their equity powers, the power of termination necessarily implies the power of modification and compromise.

The trial court in 1928, fully cognizant of the salient facts and with all the parties and interests represented before it, was of the opinion that the most efficacious course was a compromise to avoid litigation. The consideration flowing to the trustee and the future beneficiaries was the renunciation of a valid claim which might, if pursued, have resulted in the overthrow of the will. By that compromise, the will was upheld and placed beyond attack, *Jones* v. *Rhoads* (1881), 74

Ind. 510, which was felt by the trial court to be in the best interests of all concerned.

We are, therefore, of the opinion that the beneficiaries were adequately represented in the earlier will contest proceeding by the trustee acting with due diligence in upholding the intent of the grantor and preserving the trust for the future beneficiaries; that the doctrine of representation by fiduciary is applicable so as to bar the beneficiaries from contesting the conveyance; and finally, that the court, pursuant to its equitable powers in the management of trust property, could validly authorize the conveyance of trust property in fee simple to Mary Rose Apple (Simmons) in consideration for the relinquishment of her claim resulting in a preservation of the balance of the trust corpus.

Appellants also allege that they were denied a fair hearing on the motion for summary judgment for the reasons that the trial court received and considered documents which were not proper to be admitted into evidence, without affording appellants an opportunity to object to the trial court's consideration of said documents, and because the trial court shifted the burden of proof on the appellee's motion for summary judgment to the appellants. Furthermore, they were allegedly denied a fair hearing when the trial court failed to take, and to record its taking, judicial notice of its own records and of the Statutes of the State of Indiana and because the trial court failed to designate the issues or claims upon which it found no genuine issue as to any material fact.

As to the first allegation of procedural error, appellee filed, after the oral hearing on the motions for summary judgment, a reply brief with exhibits consisting of five uncertified copies of judicial documents. One of said documents was a Judgment on Special Findings of Fact and Conclusions of Law in an action to construe the will of Mary Edna Addison entered in the Hancock Circuit Court. As appellant had already requested the trial court to take judicial notice of

its own records, they should not be allowed to object when a copy of the same is submitted to the trial court. The remaining exhibits concern the Thirty-Second and Final Report of the trustee of the trust created by the Last Will of Mary Edna Addison, which had been before the Hancock Circuit Court. A similar situation was presented to the United States Court of Appeals, Fifth Circuit, in *Lawson* v. *American Motorists Insurance Corporation,* 217 F. 2d 724, 726 (1954) where they held:

> "If the parts of these papers which the trial court was permitted to consider by Rule 56(3), R. C. P., 28 U. S. C., conclusively show that there was no genuine issue of fact in the premises, then it was correct to grant the motion for summary judgment."

The footnote 3 at p. 763 referring to the uncertified paper is illuminating and reads as follows:

> "3.   These attached papers, according to the record, are not sworn or certified as required by Rule 56(e). Although that Rule seems literally to require that all papers referred to in affidavits be attached and sworn or certified, it would be an idle formality to defer entry of the judgment where the papers really material to the motion for summary judgment and determinative of it, are properly verified and in proper form. Mellen v. Hirsch, supra. Moore says the requirement of attaching sworn copies applies to "material documents." 6 Moore, Federal Procedure 2334. We think it applies not even to all material documents, but only documents the contents of which are materially in issue, at least when no objection to the use of such documents in connection with the motion has been made. Here, plaintiff made no such objection. In short, we view this as an immaterial irregularity, in spite of the dicta in Sprague v. Vogt, 8 Cir., 150 F. 2d 705; Walling v. Fairmont Creamery Co., 8 Cir., 139 F. 2d 318; and similar cases. Here, construction of the policy and riders is not an issue necessary to be decided. If those papers had been omitted entirely, there was still sufficient in the record to support the summary judgment, as will be shown, infra, and therefore any lack of formal compliance with Rule 56(e) was unimportant. Cromwell v. Hillsborough Tp., Somerset county, N.J., 3 Cir., 149 F. 2d 617, affirmed 326 U.S. 620,

66 S. Ct. 445, 90 L. Ed. 358; New York Life Ins. Co. v. Wilkinson Veneer Co., D. C. E. D. La., 86 F. Supp. 863."

A brief is not a pleading, deposition, admission, answer to interrogatories or affidavit within the meaning of the Rules of Civil Procedure TR 56. *Schill* v. *Choate,* 144 Ind. App. 543, 247 N. E. 2d 688 (1969), and an uncertified exhibit attached to a brief or motion is not properly to be considered on a motion for summary judgment, *Schill* v. *Choate, supra, Pomerenke* v. *National Life and Accident Ins. Co.,* 143 Ind. App. 472, 241 N. E. 2d 390 (1968). Thus, in situations where the content of the uncertified exhibits is materially in issue or where such content is the only evidence upon which the motion for summary judgment is grounded, said exhibits will be insufficient and consideration of them improper. However, where the uncertified exhibits are not relevant to or in any determinative of the outcome of the case, we view their consideration as an "immaterial irregularity," especially since appellants did not object to these exhibits being introduced by filing a brief in opposition with the lower court. *Indianapolis Power & Light Co.* v. *Southeastern Supply Co.* (1970), 146 Ind. App. 554, 257 N. E. 2d 722.

Secondly, appellants argue that the trial court shifted the burden of proof on the appellees' motion from the appellees to the appellants. Appellants have misconstrued the function of a motion for summary judgment. It is not a question of proof and of which party has the burden thereof, but rather, after accepting the allegations as true, whether there is an issue as to any material fact, and if not, which party, as a matter of law, is entitled to prevail as against the other. For this purpose, when each party is alleging that they are entitled to summary judgment, each motion will be considered separately to determine if there is a factual issue. *Fischer* v. *Kaylor* (1969), 145 Ind. App. 148, 250 N. E. 2d 19. It is not a question of proof but rather one of whether there existed disputed facts so as to necessitate a trial. Appel-

lants have not argued that there is an issue as to a material fact. Quite the contrary, they have contended that, as a matter of law, title should be quieted in them, a contention with which both this court and the trial court have disagreed.

Thirdly, they argue that since the trial court failed to record the fact that he actually took judicial notice of the court's own records and the pertinent statutes of the State of Indiana, the trial court must not have done so and therefore, the appellants were denied a fair hearing. As to statutes, the courts of this state take judicial notice of our statutes. *Corey* v. *Smith* (1954), 233 Ind. 452, 120 N. E. 2d 271. It is a matter of judicial knowledge and need not be pleaded or proved. *Baltimore and Ohio Southwestern Railroad Company* v. *Berdon* (1924), 105 Ind. 265, 108 N. E. 948. Our courts are compelled to know the law in effect now at the time a cause of action arose, and it need not specifically record that it has such knowledge. As to the trial court taking judicial notice of its own records, this court in *Young* v. *Mader,* 105 Ind. App. 532, 14 N. E. 2d 329 (1938) stated:

> "The trial court *could* take judicial knowledge of its own records, and we presume it did so, but this court can not take judicial knowledge of facts shown by the records of the trial court. This court has no means of knowing what facts such records show unless such facts are put into the record on appeal; a *fortiori* this court can not review an action of the trial court which is based on judicial knowledge of its records, unless the facts, of which the trial court took judicial knowledge, are put into the record on appeal."

Our Supreme Court, in *Fletcher Savings and Trust Company et al.* v. *American State Bank of Lawrenceburg* (1925), 196 Ind. 118, 147 N. E. 524, stated the principle as follows:

> "Generally, judicial notice of certain subjects dispenses with their proof, but such rule does not extend always to matters of fact, for even though the court may, it is not bound, to take judicial notice of all matters of fact of which it may take notice. It lies within the discretion of

the court. Matters of fact may be subject to reasonable doubt as to their existence, and inasmuch as judicial notice of a fact takes the place of proof thereof, and is of equal force as the proof, the court should exercise extreme caution in taking judicial notice of facts subject to proof without introduction of evidence in support of the same. (citations omitted)

The procedure, suit, or action sought to be relied upon by the party seeking the relief for a finding in its favor, even though it be a proper matter of evidence to consider in reaching a finding, will not be subject to judicial knowledge without its formal introduction in evidence. (citations omitted)

It may be stated as a general rule that a trial court will not take judicial notice in deciding one case, of its own records in another and distinct case. (citations omitted)

The courts have even gone so far as to hold that a trial court cannot take judicial notice of its own records in another case between the same parties. (citations omitted)

And, in some jurisdictions, judicial knowledge will not be taken by a court of its own records in a different case between the same parties and in relation to the same subject-matter." (citations omitted)

Thus, it is presumed that the trial court will take judicial notice of its own records and it is only where the decision of the trial court is, partially or in whole, based on the facts found therein that the same must be made a part of the record. Since the records of the earlier proceedings were completely extraneous to the decision of this case, there was no need for the trial court to place the facts of those earlier proceedings in the record of this case, and the failure to do so was not error, and appellants' claim must fail as a matter of law.

Finally, appellants allege error in that the trial court failed to designate the issues and claims upon which it found no genuine issue as to a material fact. Both parties claimed title to the real estate at issue herein. Appellees, by their motion and certified exhibits, showed title by virtue of the 1928 compromise agreement and judgment entered thereon.

The trial court below specifically found that the appellants' rights had been previously determined by the earlier judgment and that appellants' claim must fail as a matter of law. We believe that the judgment below was sufficient to meet the requirement of Indiana Rules of Civil Procedure TR 56(c).

Judgment affirmed.

Hoffman, C. J., Staton and White, JJ., concur.

NOTE.—Reported in 274 N. E. 2d 402.