Francis B. MOLL, Jr.,
Plaintiff-Appellant,

v.

SOUTH CENTRAL SOLAR SYSTEMS, INC., Lee Malloy, George Bock, Defendants-Appellees.

No. 1–580A133.

Court of Appeals of Indiana, First District.

April 14, 1981.

---

Theodore Lockyear, Steve Barber and James A. Kornblum, Lockyear, Barber & Kornblum, Evansville, for plaintiff-appellant.

Joseph A. Yocum and Frank R. Hahn, Yocum & Hahn, Evansville, for defendants-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Francis B. Moll, Jr., appeals from a grant of summary judgment in favor of defendants below, Lee Malloy, George Bock, and South Central Solar Systems, Inc., upon his claims for breach of contract and failure to comply with Ind. Code 23–2–2.5–1 et seq., commonly known as the Indiana Franchise Disclosure Act. We affirm.

## FACTS

Appellees Bock and Malloy were president and vice president respectively of South Central Solar Systems, Inc. (South Central),[1] a Kentucky corporation, which early in May of 1976 obtained an exclusive franchise to distribute Energy King solar devices in Kentucky, Illinois, Missouri, Tennessee, and Indiana. Later in May 1976, Messrs. Fulkerson and Barabee, not parties to this action, met with Bock and Malloy at the Executive Inn in Evansville, Indiana. After lengthy conversations and negotiations Fulkerson and Barabee paid Bock $2,400 for the option to acquire an exclusive right to sell Energy King units in a defined territory in southern Indiana under the business name of Southern Indiana Solar Systems, Inc. (Southern Indiana). On June 15, 1976, the parties to this action, together with Fulkerson and Barabee, met at Malloy's home in Paducah, Kentucky, to exercise their option and execute a final contract. At that time Moll tendered as part of the consideration for the agreement on behalf of Southern Indiana a check for $24,329.30 drawn on funds which he had personally borrowed from the Posey County National Bank.

Within forty-five days after their June meeting appellees informed Southern Indiana that the Energy King unit had increased $800 in cost and that, because Energy King itself was financially unstable, they might need to find other suppliers. The appellees did find another supplier, NRG, whose unit, although more complete than Energy King's, was also more expensive. On July 14, 1976, Moll returned to Paducah with a release which had been prepared by his attorney and which the parties executed. That release stated the following:

> "Southern Indiana Solar Systems, Inc. is hereby granted permission by South Central Solar Systems, Inc. to sell, construct, or install any Solar heating prod-

---

1. Apparently South Central ceased doing business in February 1978 when Bock and Malloy formed a new corporation, Midwestern Solar and Insulation.

ucts or related products they wish, of any type, tradename, or brand, notewithstanding [sic] any provision in the agreement of June 15, 1976 between the parties. Such permission is permanent and irrevocable and operates as a modification of the agreement between the parties and is given in consideration of the following release of claims:

"Southern Indiana Solar Systems, Inc. hereby releases any and all claims against South Central Solar Systems, Inc. or its officers and directors, which may have arisen heretofore, and for any act, transaction, occurrence, or course of dealings between the parties, or their officers, directors, agents, or employees.

"Southern Indiana Solar Systems, Inc. BY /s/ Francis B. Moll, Jr.

"South Central Solar Systems, Inc.

/s/ BY George W. Bock, Jr.
　　　　Pres.

/s/ BY Lee Malloy

"Signed and dated this 14th day of July, 1976."

On July 24, 1978, appellant filed his complaint which he amended on February 29, 1979, alleging damages of $25,000 in each of two counts as follows:

### "COUNT I

"The plaintiff, Francis B. Moll, Jr. complains of the defendants, South Central Solar Systems, Inc., Lee Malloy, George Bock, and each of them, jointly, concurrently and severally, and for cause of action, alleges and says:

1.

"That in May and June of 1976, the plaintiff entered into a contract with the defendants, and each of them jointly, concurrently, and severally, whereby the plaintiff by the payment of the sum of Twenty-five Thousand Dollars ($25,-000.00), would be provided an exclusive territory to sell, construct or install solar heating systems, and whereby they would provide to plaintiff adequate training, experience and expertise in this field in order for the construction of residential solar heating systems.

2.

"That thereafter, the defendants breached said contract and failed to provide the systems, training and exclusive dealership and territory contracted by the plaintiff.

3.

"That by reason of the breach of said contract, plaintiff has been damaged in the sum of Twenty-five Thousand Dollars ($25,000.00).

"WHEREFORE, plaintiff prays for judgment of and from the defendants in the sum of Twenty-five Thousand Dollars ($25,000.00), for his costs herein laid out and expended and for all other just and proper relief in the premises.

### "COUNT II

"The plaintiff, Francis B. Moll, Jr., complains of the defendants, South Central Solar Systems, Inc., Lee Malloy, George Bock, and each of them, jointly, concurrently and severally, and for cause of action, alleges and says:

1.

"That the plaintiff is a citizen and resident of the State of Indiana.

2.

"That in May and June of 1976, the defendants, and each of them, offered to the plaintiff a franchise for the State of Indiana without compliance with the Indiana Franchise Disclosure Law, IC 23–2–2.5–1 et. [sic] seq. (1971) [sic] and that thereafter said franchise was duly entered into.

3.

"That in the offering of said franchise the defendants committed unlawful acts under the said Indiana Franchise Disclosure Law, IC 23–2–2.5–1 et. [sic] seq. (1971) [sic].

4.

"That by reason of the said violations of the Indiana Franchise Disclosure Law, IC 23–2–2.5–1 *et.* [sic] *seq.* (1971) [sic] plaintiff has been damaged in the sum of Twenty-five Thousand Dollars ($25,-000.00).

"WHEREFORE, plaintiff prays for judgment of and from the defendants in the sum of Twenty-five Thousand Dollars ($25,000.00), for his costs herein laid out and expended and for all other just and proper relief in the premises, and reasonable attorneys fees."

In their Motion for Summary Judgment or to Dismiss Plaintiff's Amended Complaint, appellees, *inter alia*, pleaded the July release included as Exhibit 1 in Malloy's deposition which was published at that time. Appellees also pleaded the June contract provision[2] which specified that the contract was to be governed by and construed according to the laws of Kentucky and pointed out that Kentucky has no franchise act. Appellees further note that, although the choice of law provision contains a severance clause regarding any provision which contravenes a law of any other state, Ind. Code 26–1–1–105(1) establishes the parties' freedom to contract as regards choice of law matters.

On July 20, 1979, the trial court entered the following judgment from which this appeal is taken:

## "JUDGMENT GRANTING SUMMARY JUDGMENT

"This cause came on to be heard on the motion of all defendants for a summary judgment pursuant to Trial Rule 56, and the court having considered the pleadings in this action, the duly published depositions, and having heard the oral statements and read the memoranda submitted by counsel, and having found that there is no genuine issue of fact relating to maintenance of any claims being made made [sic] by plaintiff to be submitted to the court and having concluded that all defendants are entitled to judgment as a matter of law, it is hereby

"ORDERED that the motion for summary judgment made by all defendants is in all respects granted, and it is further

"ORDERED AND ADJUDGED, that judgment shall be, and is hereby entered in favor of all defendants, dismissing this action with costs for defendants and against plaintiff.

"Date: July 20, 1979

/s/ Maurice O'Connor
JUDGE, Vanderburgh Circuit Court"

## ISSUES

Appellant contends that the trial court erred

I. "In concluding that a purported release on behalf of a corporation operated as a release of the plaintiff's individual claims for the Indiana Franchise Disclosure Law violations or that no genuine issue of material fact existed as to said release[']s applicability[;]"

II. "In concluding the Indiana Franchise Disclosure Law did not have application to the transaction between the plaintiff and defendants or that no genuine issue of material fact existed as to said law[']s applicability;"

III. "In granting summary judgment without designating issues or claims upon which it found no genuine issues of material fact or specific findings of fact and in failing to find specific conclusions of law in support of the judgment;"

IV. "In concluding that the Court lacked personal jurisdiction over the defendants;"

---

2. "Law of the Agreement. This agreement is to be governed by and construed according to the laws of the Commonwealth of Kentucky. It is understood, however, that this is a general form of agreement designed for use in the United States of America, wherever Licensor may desire to sell SEL ENERGY KING products and that any provisions herein which anywise contravenes [sic] the laws of any state or jurisdiction shall be deemed not a part of this agreement herein."

V. "In holding that the defendants were not subject to service of process under the Indiana Rules of Trial Procedure, Trial Rule 4.4(A)(1) and (4)."

## DECISION

*Issue I*

 This court has stated that, consonant with Ind. Rules of Procedure, Trial Rule 56(C), "[t]he granting of a motion for summary judgment is appropriate only where there is no genuine issue of material fact presented by the case and where the moving party is entitled to judgment as a matter of law." *Kendrick Memorial Hospital v. Totten*, (1980) Ind.App., 408 N.E.2d 130, 131. To determine whether a genuine issue exists, all materials on file will be construed liberally in favor of the opponent of the motion for summary judgment, and all doubts as to whether a genuine issue of fact exists must be resolved against the proponent of the motion. *Collins v. Dunifon*, (1975) 163 Ind.App. 201, 323 N.E.2d 264. Likewise, a trial court may not weigh conflicting evidence in ruling on a motion for summary judgment, *id.*, since summary judgment may not serve as a substitute for trial where factual disputes remain. *Podgorny v. Great Central Insurance Co.*, (1974) 160 Ind.App. 244, 311 N.E.2d 640. Even in cases where no factual dispute exists, however, summary judgment should not be granted if the facts themselves give rise to conflicting inferences which would alter the outcome, *Clayton v. Penn Central Transportation Co.*, (1978) Ind.App., 376 N.E.2d 524, or reveal a good faith dispute as to inferences to be drawn from those facts. *Hayes v. Second Nat'l Bank of Richmond*, (1978) Ind.App., 375 N.E.2d 647, *trans. den.; Randolph v. Wolff*, (1978) Ind.App., 374 N.E.2d 533.

 In the instant case there are no disputed questions of fact as to the events that transpired among the parties. All parties agree that Moll was involved in the contractual negotiations which resulted in the June 15, 1976, written contract between South Central and Southern Indiana and that Moll prepared and signed the written release of July 16, 1976, which released any and all claims held by Southern Indiana against South Central or its officers or directors (Bock and Malloy) "for any act, transaction, occurrence, or course of dealings between the parties, or their officers, directors, agents, or employees." Moll now contends, however, that the trial court's disposition of the issue of the release was premature, since a release is an affirmative defense which defendants must plead and prove and that because the defendants have not yet filed an answer, the question of the validity of the release is not properly at issue. We disagree. In considering a motion for summary judgment the trial court may consider any evidence that may be properly admitted during the trial. *See, Middelkamp v. Hanewich*, (1977) 173 Ind. App. 571, 364 N.E.2d 1024, *trans. den.; Podgorny v. Great Central Insurance Co., supra;* T.R. 56(C), (E). In addition, this court has found that a party has the burden of establishing his affirmative defenses in summary judgment proceedings. *See, Flynn v. Klineman*, (1980) Ind.App., 403 N.E.2d 1117. We find the July release, which was affirmatively raised by appellees, to have been properly at issue for consideration by the trial court upon a motion for summary judgment.

 Appellant complains further that even if the release is in fact properly before the court the operative words of the release apply only to the corporation, Southern Indiana, not to the plaintiff in his individual capacity, and thus that there is a material issue of fact as to whether the intent of the parties was to release any claims of appellant as an individual. We disagree with appellant that the wording of the release does not on its face and when given its plain meaning effect a complete release of appellant both as an agent of Southern Indiana and as an individual. The release was drafted by Moll's attorney, delivered by Moll to Bock and Malloy, and signed by Moll; therefore it should be most strictly construed against Moll. Assuming, however, *arguendo*, that this release is not applicable to Moll because he has a separate

cause of action against appellees on a separate contract, totally unrelated to the transaction raised affirmatively by appellees, Moll fails to show us in his complaint, affidavit, or depositions any fact, such as a meeting or transaction among the parties, to support even an inference of an agreement aside from the June 15 contract and release raised by appellees. Although two depositions of Moll were taken by appellees, the only facts Moll brings forth which involve his interactions with South Central, Bock or Malloy involve him as an agent or employee (sales coordinator and head of marketing) of Southern Indiana. From his first deposition it is clear that Moll took no part in the initial conversations of his colleagues, Fulkerson and Barabee, with Bock and Malloy in Evansville and that he was approached as an investor only after this initial meeting. No personal contract had arisen therefore between Moll and South Central or between Moll and Bock and/or Malloy prior to the first time Moll met Bock and Malloy in Paducah, Kentucky, on June 15, 1976, when the contract between Southern Indiana and South Central was executed. It is an elementary rule of law that all negotiations and agreements prior to or contemporaneous with the execution of a written contract are merged in the final memorandum and that parol evidence will not be admitted to expand, contract, or contradict the written instrument. Thus, if Moll's action in contract purports to arise from the June 15th meeting it must be included in the written memorandum of those negotiations and agreements arrived at prior to or contemporaneously with the execution of the contract. The only other interaction which Moll had with South Central, Bock, and Malloy appears from his depositions to have been the visit he paid them on July 14, 1976, at which time he presented them with the release which his attorney had prepared and which they signed at that time. No other facts of personal contacts, arrangements, or agreements are presented to us by Moll. In fact, the affidavit which he attached to his "Brief in Opposition to Motion for Summary Judgment or to Dismiss Amended Complaint" is purely conclusory in nature and provides us with no facts which would give rise to any inference of a relationship between the parties to this action other than one based on their dealings in behalf of Southern Indiana and South Central. While we subscribe to the proposition that a party against whom a motion for summary judgment is made need not divulge his entire case, *Pan Am World Airways, Inc. v. Local Readers Service, Inc.*, (1968) 143 Ind. App. 370, 240 N.E.2d 552, he must come forth with specific facts which show that there is a genuine issue for trial. *Whipple v. Dickey*, (1980) Ind.App., 401 N.E.2d 787. Here all that appellant's affidavit does is restate the allegations of his original complaint. A party opposing a motion for summary judgment may not rest on the mere allegations of his pleadings, but must diligently contest the motion. *Id.; Otte v. Tessman*, (1980) Ind.App., 412 N.E.2d 1223, (petition for transfer pending). Briefs are not pleadings for purposes of summary judgment, *Apple v. Apple*, (1971) 149 Ind. App. 529, 274 N.E.2d 402, *trans. den.* (1972), and a trial court may not consider facts set forth in a brief when granting summary judgment. *Equitable Life Assur. Soc. of U.S. v. Crowe*, (1976) 170 Ind.App. 677, 354 N.E.2d 772. Even were this not the case, there are no facts in appellant's briefs, either those presented to the court below or to this court on appeal, from which an inference might arise supporting an issue of fact in the relationship among the parties other than those set forth above involving both corporations. Having resolved any doubt with regard to the facts in favor of the appellant, we find that after a thorough review of the pleadings, depositions, exhibits, and affidavits presented in this case there was no genuine issue of material fact concerning either the existence of a personal contract separate and apart from that executed on behalf of the corporations on June 15, 1976, or the intention that subsequent release executed on July 14, 1976, release all parties involved in the two corporations.

The question of whether or not there was a genuine issue of material fact regarding Moll's action on a contract other than that which he subscribed to as a representative of Southern Indiana having been resolved in the negative, we turn our attention to the issue of whether or not he was entitled to bring a personal action under the facts of this case as a matter of law. Again our conclusion must be in the negative.

The undisputed facts of this case clearly show that Moll's status with Southern Indiana was that of a one-third shareholder as a result of his $30,000 contribution to the working capital of Southern Indiana and also that he worked as its sales coordinator and head of marketing. The well-established general rule is that shareholders of a corporation may not maintain actions at law in their own names to redress an injury to the corporation even if the value of their stock is impaired as a result of the injury. *Schaffer v. Universal Rundle Corp.*, (5th Cir. 1968) 397 F.2d 893. *Accord, Erlich v. Glasner*, (9th Cir. 1969) 418 F.2d 226; *W. Clay Jackson Enterprises, Inc. v. Greyhound Leasing & Financial Corp.*, (D.C. Puerto Rico 1979) 463 F.Supp. 666; *Gregory v. Mitchell*, (N.D.Ala.1978) 459 F.Supp. 1162; W. Fletcher, Cyclopedia of the Law of Private Corporations § 5908 (rev. perm. ed. 1980).

The rationale supporting this rule is based on sound public policy considerations. It is recognized that authorization of shareholder actions in such cases would constitute authorization of multitudinous litigation and disregard for the corporate entity. *Schaffer v. Universal Rundle Corp., supra; Sutter v. General Petroleum Corp.*, (1946) 28 Cal.2d 525, 170 P.2d 898. Sound policy considerations have been said to require that a single action be brought rather than to permit separate suits by each shareholder even when the corporation and the shareholder are the same. *W. Clay Jackson Enterprises, Inc. v. Greyhound Leasing & Financial Corp., supra.*

A recognized exception to the general rule, as stated by our Supreme Court, is that "[a] personal cause of action arises when there is a breach of duty owed specially to the shareholder separate and distinct from the duty owed to the corporation." *Sacks v. AFNB*, (1972) 258 Ind. 189, 279 N.E.2d 807, 811. Furthermore, "based on *Buschmann v. Professional Men's Association*, (7th Cir. 1969), 405 F.2d 659, arising in the Southern District of Indiana, it is clear a personal guaranty for a loan to a corporation can be the basis for a personal cause of action." *Id.*, 279 N.E.2d at 812. In this case Moll's depositions unmistakably reveal that the $30,000 which he borrowed from Posey County National Bank was used to purchase stock in Southern Indiana and subsequently became part of the consideration for the contract between Southern Indiana and South Central. There are no facts in this case from which even an inference could arise to suggest that Moll either loaned the money to Southern Indiana or guaranteed a loan on the corporation's behalf. Likewise, there are no allegations of fraud, misrepresentation, or breach of any fiduciary duty or even any inferences from facts asserted which might give rise to a shareholder's action in equity. *See, e. g., Erlich v. Glasner, supra; Sutter v. General Petroleum Corp., supra; Ross v. Tavel*, (1981) Ind.App., 418 N.E.2d 297. Thus, Moll has asserted no facts upon which the court might conclude as a matter of law that a genuine issue of fact existed. On the other hand, the appellees have shown no genuine issue of material fact to exist, and we conclude that they were entitled to a judgment of dismissal of Moll's contract claim as a matter of law.

Moll's further contention on this issue that as a matter of law the question of the validity of the release as to him as an individual is not an appropriate one upon which to base the granting of a motion for summary judgment is rendered irrelevant upon our conclusion that he failed to assert any facts upon which he could maintain an individual cause of action in contract. Nevertheless, he is in error on this matter as well. *See, e. g., Lazarrus v. Employers Mutual Cas. Co.*, (1977) 173 Ind.App. 452, 364 N.E.2d 140.

The trial court did not err in granting summary judgment on count one of Moll's complaint.

*Issue II*

■ Appellant asserts that the trial court erred in granting summary judgment on the implied finding that the Indiana Franchise Disclosure Act, Ind. Code 23–2–2.5–1 *et seq.* (Burns Code Ed., Supp. 1980), did not apply, and maintains that a genuine issue of material fact exists as to whether appellees offered appellant a franchise within the meaning of the Act. Appellees, on the other hand, argue that the Indiana Franchise Disclosure Act does not apply because the parties agreed that Kentucky law should govern their contract as permitted by Ind. Code 26–1–1–105(1). They further note that Kentucky has no franchise act.

While we agree with appellees that Indiana residents may contract concerning the applicability of foreign law to their agreements, we also note that an exception to this rule arises when the public policy interests of this state outweigh those of the parties involved. In this case we need not face the question because we find that, even if the Indiana Franchise Disclosure Act were applicable, appellant has failed to bring himself within its purview.

Professor Bepko has pointed out that the Indiana Franchise Disclosure Act has created "two major mechanisms designed to protect against abuses in franchise sales." *Survey of Recent Developments in Indiana Law-Contracts and Commercial Law,* 9 Ind.L.Rev. 132, 152 (1975). The first protective mechanism involves public action to

be taken either by the securities commissioner or by the prosecutor. *Id.* "The second major protective mechanism in the law is the private civil remedy provided in section 23–2–2.5–27. [Footnote omitted.] This section is a general antifraud provision, apparently drafted to parallel rule 10b–5 adopted under the Security Exchange Act of 1934." *Id.* at 153. From a reading of the statute, especially Ind. Code §§ 23–2–2.5–27 and 28,[3] and Professor Bepko's remarks, it is evident that an individual cause of action arises for failure to comply with the statute only upon allegations of facts which would support an inference of fraud, deceit, or misrepresentation.

It is the rule in Indiana that in averments of fraud, the circumstances constituting fraud must be specifically alleged. *See,* Ind. Rules of Procedure, Trial Rule 9(B). As stated by Professor Harvey,

"The circumstances constituting fraud or mistake must be stated with particularity. In general the circumstances of fraud would be the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was procured by the fraud. *U.S. v. Hartmann,* D.C.Pa. 1942, 2 F.R.D. 477. In order to state a claim the pleader must also allege the elements of fraud, which are generally stated as follows: a representation of an existing fact; its materiality; its falsity; the speaker's knowledge of its falsity or ignorance of its truth; his intent that it should be acted upon by the person to whom it is made; ignorance of its falsity

---

**3.** IC 23–2–2.5–27 (Burns Code Ed., Supp. 1980): "It is unlawful for any person in connection with the offer, sale or purchase of any franchise, or in any filing made with the commissioner, directly or indirectly: (1) to employ any device, scheme or artifice to defraud; (2) to make any untrue statements of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of circumstances under which they are made, not misleading; or (3) to engage in any act which operates or would operate as a fraud or deceit upon any person. [IC 1971, 23–2–2.5–27, as added by Acts 1975, P.L. 262, § 1, p. 1448.]"

IC 23–2–2.5–28 (Burns Code Ed., Supp. 1980): "A person who recovers judgment for a violation of this chapter [23–2–2.5–1—23–2–2.5–50] may recover, as part of that judgment: (1) any consequential damages; (2) interest at eight percent [8%] on the judgment; and (3) reasonable attorney's fees; unless the defendant proves that the plaintiff knew the facts concerning the violation, or that the defendant exercised reasonable care and did not know, or, if he had exercised reasonable care, would not have known, of the facts concerning the violation. [IC 1971, 23–2–2.5–28, as added by Acts 1975, P.L. 262, § 1, p. 1448.]"

on the part of the person to whom it is made; the latter's reliance on the truth of the representation; his right to rely upon it; and his consequent damage. However, it is not proper to plead detailed evidentiary matter. Rule 9(B) must be read with Rule 8 requiring short and concise statements of claim. *U.S. v. Schuchhardt*, D.C.Ind. 1943, 48 F.Supp. 876. On the other hand, where the facts showing fraud are set out in detail, the complaint will be good as for fraud even though the word 'fraud' is not used thereon."

1 W. Harvey, Indiana Practice § 9.2 at 542 (1969).

Appellant raised no facts which would support even an inference of fraud, misrepresentation, or deceit by defendants in either count I or count II of his amended complaint. It is essential for one who wishes to secure the benefit of a statute to bring himself squarely within its terms. *Payne v. Buchanan*, (1958) 238 Ind. 231, 150 N.E.2d 250. The court did not err, therefore, as a matter of law if it found that there was no genuine issue of fact which would support an action by appellant under the Indiana Franchise Disclosure Act.

*Issue III*

 Appellant argues that the trial court erred "in granting summary judgment without designating issues or claims upon which it found no genuine issues of material fact or specific findings of fact and in failing to find specific conclusions of law in support of the judgment." Appellees counter that specific findings are not required when the court grants the motion on all, rather than on fewer than all, the issues involved in a given case. We agree with the appellee. This court in *Meier v. Pearlman*, (1980) Ind.App., 401 N.E.2d 31, *trans. den.*, clearly held that the requirement that a court state the issues and claims upon which summary judgment is granted applies only where summary judgment is granted on fewer than all the issues. If for some reason appellate review is frustrated by the trial court's failure to

state the legal basis for granting summary judgment, this tribunal may remand the case to the lower court for a statement of its reasons. *Id., see also, Cochran v. Hallagan*, (1980) Ind.App., 409 N.E.2d 701. "[R]emand for a statement of reasons is unnecessary where the issues are few and readily ascertainable and remand would unnecessarily prolong the proceedings . . . ." *Meier v. Pearlman*, 401 N.E.2d at 35. Because the issues in this case are few and readily ascertainable we find no reason to remand and merely prolong the proceedings.

*Issues IV and V*

Appellant contends that the court erred as a matter of law in granting summary judgment upon the implied grounds either that it lacked jurisdiction over the appellees or that the appellees were not amenable to service of process in Indiana. Because we have found that the court could have properly entered summary judgment in favor of appellees upon the bases discussed in issues one and two, we need not speculate as to the court's having granted summary judgment under these issues.

In reviewing the granting of a motion for summary judgment, we stand in the shoes of the trial court and consider the same matters as does the trial court. No genuine issue of material fact having been shown to exist after all inferences from those materials presented to the trial court were resolved in favor of appellant, we conclude the appellees were entitled to judgment as a matter of law.

Judgment affirmed.

NEAL, P. J., and ROBERTSON, J., concur.